1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200 Fax: +1.212.751.4864
www.lw.com

LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES
Austin, Beijing, Boston, Brussels, Century City, Chicago, Dubai, Düsseldorf, Frankfurt, Hamburg, Hong Kong, Houston, London, Los Angeles, Madrid, Milan, Munich, New York, Orange County, Paris, Riyadh, San Diego, San Francisco, Seoul, Silicon Valley, Singapore, Tel Aviv, Tokyo, Washington, D.C.

March 4, 2024

**VIA ECF AND FEDEX**

Hon. Margo K. Brodie
United States District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Eric Hu, et al. v. Whaleco Inc. d/b/a Temu*, No. 23-cv-06962 (MKB) (RML)
Pre-Motion Letter for Temu's Anticipated Motion to Compel Arbitration

Dear Judge Brodie:

Pursuant to Section 3(A) of Your Honor's Individual Practices and Rules, Defendant Whaleco Inc. d/b/a Temu ("Temu") respectfully intends to move to compel arbitration in the above-captioned action and requests an order staying discovery and Temu's deadline to answer the Amended Complaint (ECF No. 19) pending resolution of the motion to compel. The Amended Complaint asserts data-privacy causes of action against Temu, all of which arise from Plaintiffs' alleged use of the Temu app. Each Plaintiff created a Temu account, and by doing so, assented to Temu's Terms of Use ("TOU"). Plaintiffs' use of the app is therefore governed by the TOU. The TOU contain a mandatory arbitration provision and class action waiver, which apply to this dispute and are enforceable under clear Second Circuit authority. Courts routinely require the parties to arbitrate claims in these circumstances, and there is no basis for any different result here, particularly given the broad delegation clause in the TOU requiring that arbitrability and other disputes relating to the arbitration provision be decided by an arbitrator.

### A. Plaintiffs Assented to Temu's TOU and Its Mandatory Arbitration Provision and Class Action Waiver When They Signed Up for Temu

Plaintiffs are Temu users who purport to represent a putative class of "[a]ll persons . . . who registered an account with Temu." Compl. ¶¶ 23-35, 174. As part of the registration process to create their Temu accounts, Plaintiffs were shown a prompt stating that, "By continuing, you agree to our Terms of Use and Privacy & Cookie Policy," with the words "Terms of Use" and "Privacy & Cookie Policy" hyperlinked to the respective agreements. *See* Ex. A. These links are presented on the prompt in an uncluttered way and are immediately visible, such that the user does not need to scroll to a separate part of the screen to see them. *See id.* A user cannot create an account without continuing past this prompt and thereby agreeing to the TOU; moreover, after registering, the user is repeatedly shown this same prompt again every time they log into their account. Second Circuit authority makes clear that terms of use presented in this manner are enforceable. *See Edmundson v. Klarna*, Inc., 85 F.4th 695 (2d Cir. 2023) (holding that when a link

LATHAM & WATKINS LLP

to terms of use is presented in an "uncluttered" way so the user does not need to scroll down to see it, and the user is advised that taking a specific action would constitute assent to the terms, the user is deemed to have consented to the terms by taking that action); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) (holding that clicking a "register" button presented along with a link to the terms was sufficient for manifesting assent); *Thorne v. Square, Inc.*, 2022 WL 542383, at *8 (E.D.N.Y. Feb. 23, 2022) ("[t]he Cash App sign-up flow . . . provided notice of the terms of service 'simultaneously to enrollment'"). Indeed, Your Honor has found the formation of a valid contract in similar circumstances. *Shalomayev v. Altice USA, Inc.*, 2022 WL 2359406, at *6 (E.D.N.Y. June 30, 2022) (Brodie, J.) (granting motion to compel arbitration where user was "provided a link to the Defendant-affiliated website where Plaintiff could view all of the General Terms of Service").

The TOU make clear that disputes arising from the use of Temu's services, including the Temu app, must be arbitrated. At the beginning of the TOU, in the Overview section, the TOU conspicuously identify the arbitration agreement, noting in capital letters that "SECTION 19 CONTAINS, AMONG OTHER THINGS, AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND TEMU BE RESOLVED BY BINDING AND FINAL ARBITRATION." *See* Ex. B. Section 19 of the TOU, titled "Arbitration Agreement," in turn provide as follows:

> **19.1. Applicability of Arbitration Agreement.** Subject to the terms of this Arbitration Agreement, you and we agree that any dispute, claim, or disagreement arising out of or relating in any way to your access to or use of the Services, any communications you receive, any products sold or distributed through the Services, or the Terms, including claims and disputes that arose between us before the effective date of the Terms (each, a "Dispute") will be resolved by binding arbitration, using the English language, rather than in court. . . .
>
> **19.4. Waiver of Class and Other Non-Individualized Relief**. YOU AND WE AGREE THAT, EXCEPT AS SPECIFIED IN SECTION 19.9, EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS . . . .

*Id*. § 19 (emphasis in original). In addition, the TOU contain a delegation clause broadly requiring that any disputes regarding the application or scope of the arbitration provision must be decided by the arbitrator in the first instance. *See id.* § 19.7. As set forth below, these provisions are enforceable and require Plaintiffs to individually litigate their claims in arbitration.

### B. The Arbitration Provision and Class Action Waiver Are Enforceable and Preclude Plaintiffs from Litigating Their Claims in This Court

Settled case law in this Circuit makes clear that the parties' arbitration agreement and class action waiver are enforceable and require arbitration of Plaintiffs' claims on an individual basis.

*First*, courts will enforce a valid arbitration agreement so long as "the dispute at issue comes within [its] scope." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir.

2011). Here, Plaintiffs' claims fall squarely within the scope of the arbitration agreement because they arise out of Plaintiffs' alleged "access to or use of the Service." Ex. B § 19.1. Plaintiffs allege, among other things, that the "Temu App infiltrates their mobile devices and extracts [their] private and personally identifiable data and content." Compl. ¶ 97. These allegations, while meritless, unquestionably relate to Plaintiffs' use of Temu's service and are therefore governed by the arbitration agreement.

*Second*, even if there were any doubt that Plaintiffs' claims fall within the scope of the arbitration agreement, those questions must be resolved in arbitration. The TOU provide that the arbitrator shall have "exclusive authority" to determine the enforceability and scope of the arbitration agreement. Ex. B § 19.7. In these circumstances, courts require that disputes about the scope or application of the agreement be delegated to the arbitrator. *Henry Schein v. Archer & White*, 139 S. Ct. 524, 530 (2019) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."); *Ahmed v. Citibank, N.A.*, 2020 WL 2988666, at *5 (E.D.N.Y. June 2, 2020) (enforcing clause "expressly requir[ing] that claims regarding the enforceability of the arbitration agreement must be delegated to the arbitrator"); *Sinavsky v. NBCUniversal Media, LLC*, 2021 WL 4151013, at *5 (S.D.N.Y. Sept. 13, 2021) (same). As Your Honor has recognized, this is consistent with the mandates of the Federal Arbitration Act ("FAA"), which provide that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Calderon v. Breadberry Inc.*, 2023 WL 1861639, at *3 (E.D.N.Y. Feb. 9, 2023) (Brodie, J.) (citation omitted); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (FAA reflects a "liberal federal policy favoring arbitration agreements") (citation omitted).

*Third*, Plaintiffs waived their rights to bring any class-action claims against Temu, irrespective of the arbitration agreement. Ex. B § 19.4. It is well settled in the Second Circuit that class action waivers are enforceable. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (holding that class action waivers are enforceable under the FAA); *Nayal v. HIP Network Svcs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) ("Courts applying New York law . . . have uniformly held that class action waivers are not unconscionable.").

In short, Plaintiffs agreed to the arbitration agreement and class action waiver and therefore cannot pursue this dispute in federal court. Temu respectfully requests leave to file a motion to compel arbitration and, in addition, Temu respectfully requests an order staying discovery and Temu's deadline to answer pending resolution of the motion to compel. *Cf. Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023) (holding that "the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery and the like) would be irretrievably lost" if discovery were not stayed pending an appeal of a motion to compel arbitration); *Sarah Car Care, Inc. v. LogistiCare Sols., LLC*, 2023 WL 5378845, at *2 (3d Cir. Aug. 22, 2023) (holding that *Coinbase* requires district courts to stay discovery pending resolution of motion to compel arbitration). [1]

---

[1] Plaintiffs' counsel had consented to stay discovery and Temu's deadline to answer the original Complaint pending a decision on the motion to compel. When asked to confirm their consent with respect to the Amended Complaint, however, counsel declined.

LATHAM & WATKINS LLP

Respectfully Submitted,

Serrin Turner
of LATHAM & WATKINS LLP

cc: All counsel of record (via ECF)