**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC HU, EDWIN ANTONIO SURIS, TIMOTHY SMITH, ROY NORMAN MORROW, MING HUI LIN, NANCY BATALAS, JAMES LAFATA, DANIEL DAVID KATTAN, TRACY EVETTE STARLING, CHRISTOPH B. OH, HECTOR ANDREW CORDERO, YO-YO CHEN, and MANISHA REDDY NARAYAN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WHALECO INC. d/b/a TEMU, <br><br> Defendant. | Case No. 1:23-cv-06962-MKB-RML <br><br> District Judge Margo K. Brodie <br><br> Magistrate Judge Robert M. Levy |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

Date: April 19, 2024

Serrin Turner
Matthew Valenti
Hadrian Luo
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................1

FACTUAL BACKGROUND ....................2

A. Defendant Temu ....................2

B. A User Must Consent to Temu's Terms to Make Purchases on the Temu App ....................2

C. The Terms Broadly Require That Disputes Be Arbitrated ....................3

D. Plaintiffs Ignored Their Agreements and Filed a Class Action in Court ....................4

LEGAL STANDARD ....................5

ARGUMENT ....................6

A. Each Plaintiff Validly Agreed to the Terms ....................6

B. The Arbitration Agreement and Class Action Waiver Are Enforceable ....................10

CONCLUSION ....................13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acaley v. Vimeo, Inc.*,
464 F. Supp. 3d 959 (N.D. Ill. 2020) ....8, 9

*Alvarez v. Experian Info. Sols., Inc.*,
661 F. Supp. 3d 18 (E.D.N.Y. 2023) ....12

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....5, 12

*Bahoor v. Varonis Sys.*,
152 F. Supp. 3d 1091 (N.D. Ill. 2015) ....11

*Berkson v. Gogo*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) ....6

*Bynum v. Maplebear Inc.*,
160 F. Supp. 3d 527 (E.D.N.Y. 2016) ....5

*Calderon v. Breadberry Inc.*,
2023 WL 1861639 (E.D.N.Y. Feb. 9, 2023)....11, 12

*Cupples v. Valic Fin. Advisors, Inc.*,
2014 WL 4662272 (E.D.N.Y. Sept. 18, 2014) ....6

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....5, 6, 10

*Feld v. Postmates*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)....6, 7, 8

*Fteja v. Facebook*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)....7

*Henry Schein v. Archer & White*,
586 U.S. 63 (2019)....12

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011)....5, 11

*Johnson v. Uber*,
2018 WL 4503938 (N.D. Ill. 2018) ....7

*Lee v. Ticketmaster*,
817 F. App'x 393 (9th Cir. 2020) ....................................................................................9

*Meyer v. Uber*,
868 F.3d 66 (2d Cir. 2017)...........................................................................6, 7, 9, 10

*Morgikian v. Fid. Invs*.,
2022 WL 836950 (E.D.N.Y. Mar. 21, 2022) .................................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr.*,
460 U.S. 1 (1983).....................................................................................................5, 11

*Mumin v. Uber Techs., Inc.*,
239 F. Supp. 3d 507 (E.D.N.Y. 2017) ..........................................................................12

*Nayal v. HIP Network*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009)...........................................................................12

*New Prime v. Oliveira*,
586 U.S. 105 (2019)........................................................................................................12

*Paramedics Electromedicina v. GE Med. Sys.*,
369 F.3d 645 (2d Cir. 2004).............................................................................................11

*Plazza v. Airbnb, Inc.*,
289 F. Supp. 3d 537 (S.D.N.Y. 2018).............................................................................7

*Saizhang Guan v. Uber Techs., Inc.*,
236 F. Supp. 3d 711 (E.D.N.Y. 2017) .............................................................................7

*Selden v. Airbnb*,
4 F.4th 148 (D.C. Cir. 2021) ...........................................................................6, 7, 10

*Selden v. Airbnb, Inc.*,
2016 WL 6476934 (D.D.C. Nov. 1, 2016), *aff'd*, 4 F.4th 148 (D.C. Cir. 2021) .......................8

*Shalomayev v. Altice USA, Inc.*,
2022 WL 2359406 (E.D.N.Y. June 30, 2022) ..................................................................8

*Shearson/Am. Exp., Inc. v. McMahon*,
482 U.S. 220 (1987)...........................................................................................................5

*Sinavsky v. NBC*,
2021 WL 4151013 (S.D.N.Y. 2021)...................................................................................12

*Starke v. Gilt Groupe*,
2014 WL 1652225 (S.D.N.Y. 2014).....................................................................................9

*Thorne v. Square*,
2022 WL 542383 (E.D.N.Y. 2022)....................6, 9

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022) ....................5

*Zaltz v. JDATE*,
952 F. Supp. 2d 439 (E.D.N.Y. 2013) ....................7

## STATUTES

9 U.S.C. § 1 *et seq*....................5

Defendant Whaleco Inc. d/b/a Temu ("Temu") respectfully submits this memorandum in support of its motion to compel arbitration.[1]

## PRELIMINARY STATEMENT

Plaintiffs' claims belong in arbitration, not in court. Each Plaintiff registered a Temu account. In doing so, they were presented with a prompt informing them that, by continuing, they would be agreeing to Temu's Terms of Use ("Terms")—which were hyperlinked in the prompt, allowing Plaintiffs to review the Terms if they wished. The prompt was in a format that the Second Circuit has held sufficient to form a valid agreement. Plaintiffs cannot dispute that they were presented with the prompt and chose to continue past it, and thus that they are bound by the Terms.

The Terms mandate that Plaintiffs' claims proceed on an individual basis in arbitration. First, the Terms include a broad arbitration provision requiring arbitration of any dispute arising out of or relating in any way to their use of Temu—which easily encompasses Plaintiffs' claims, all of which relate to Temu's alleged collection of their personal data through their use of Temu. Even if there were any doubt about the arbitration provision's scope, the Terms delegate resolution of arbitrability issues to the arbitrator. Courts routinely compel arbitration in these circumstances.

Second, the Terms include a class action waiver barring the Plaintiffs from pursuing classwide claims. Each Plaintiff agreed that any dispute they bring against Temu must be resolved on an individual basis. Plaintiffs ignored this requirement when they filed their amended complaint on behalf of a putative class of all Temu account-holders. Class waivers like the one here are regularly enforced and require that arbitration be compelled on an individual basis.

Accordingly, the Court should compel individual arbitration of Plaintiffs' claims.

---

[1] Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added. Citations to "Ex. _" refer to the exhibits attached to the Declaration of Michael Trinh ("Trinh Decl."), and citations to "App." refer to the appendix at the end of this brief.

## FACTUAL BACKGROUND

### A. Defendant Temu

Temu is an e-commerce company that connects consumers with sellers, manufacturers, and brands around the world. ECF No. 19 ("Amended Complaint" or "AC") ¶¶ 38, 40; Trinh Decl. ¶ 3. Temu makes its services available to consumers through its mobile app on Android and Apple iOS devices. Trinh Decl. ¶ 3. The Temu app is extremely popular and has become one of the most downloaded apps in the U.S. AC ¶ 39.

### B. A User Must Consent to Temu's Terms to Make Purchases on the Temu App

In order to make purchases on the Temu app, users must first register a Temu account and accept Temu's Terms. *See* Trinh Decl. ¶¶ 5–7. Specifically, as part of the registration process, each user is shown a prompt (the "Registration Prompt") with: (i) a field to enter the email or phone number they will use to register, and a corresponding "Continue" button; and (ii) buttons allowing the user to "Continue" by instead registering via their existing Google, Facebook, Apple, or Twitter/X account. *Id.* Immediately below these options is a notice stating: "By continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**." *Id.* ¶ 7. The bolded words "Terms of Use" and "Privacy & Cookie Policy" hyperlink to the respective agreements. *Id.* As shown below, the entire Registration Prompt is displayed clearly on one screen—so the user need not scroll down to see any part of it, including the link to the Terms. *Id.*; Ex. A.




After a user registers a Temu account, if they ever log out of the Temu app, they must agree to the Terms again each time they input their credentials to log back in—at which point they again are shown the Registration Prompt. Trinh Decl. ¶ 8.

### C. The Terms Broadly Require That Disputes Be Arbitrated

The Terms make clear that disputes arising from the user's use of Temu's services are broadly subject to arbitration. The Terms conspicuously call attention to the arbitration agreement, noting at the beginning of the document, in all caps and bold font, that "**SECTION 19 CONTAINS, AMONG OTHER THINGS, AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU**

**AND [TEMU] BE RESOLVED BY BINDING AND FINAL ARBITRATION.**" Ex. B § 1.5 (emphasis in original). Section 19, titled "Arbitration Agreement," in turn provides that "any dispute, claim, or disagreement arising out of or relating in any way to your access to or use of the Services … will be resolved by binding arbitration … rather than in court." *Id.* § 19.1. The limited exceptions to this provision—for claims brought in small claims court and claims for intellectual property infringement—do not apply here. *Id.* Section 19 also contains a class action waiver, generally providing, again in all caps and bold, that claims may be brought "**ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS**." *Id.* § 19.4 (emphasis in original).

The Arbitration Agreement contains a delegation clause broadly requiring that disputes regarding the arbitration provision be decided by an arbitrator in the first instance. Again with limited exceptions not applicable here, the delegation clause provides: "The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement … ." *Id.* § 19.7.

### D. Plaintiffs Ignored Their Agreements and Filed a Class Action in Court

Plaintiff Eric Hu filed this putative class action complaint against Temu on September 20, 2023, asserting various data privacy causes of action on behalf of a putative nationwide class of Temu account-holders. ECF No. 1 ¶¶ 1, 78 ("Original Complaint"). These claims were premised on baseless conjecture—lifted extensively from a report published by a known short-seller with an interest in driving down stock prices—that Temu's app improperly collects personal data from users' mobile devices. *Id.* ¶¶ 36-44. The Original Complaint named only Hu as Plaintiff.

On February 19, 2024, Plaintiff amended his Complaint. ECF No. 19. The Amended Complaint added twelve new Plaintiffs, all of whom allegedly "downloaded the Temu App and purchased products on the platform." AC ¶¶ 23-35. Plaintiffs bring the Amended Complaint on behalf of a putative class of all individuals in the United States who "registered an account with Temu" at any time from July 2022 to the present. *Id.* ¶ 74.

## LEGAL STANDARD

The Arbitration Agreement provides that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., will govern the interpretation and enforcement of the Arbitration Agreement. Ex. B § 19.5. "[T]he FAA was designed to promote arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011), and requires that "the courts rigorously enforce arbitration agreements." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 220 (1987). In the Second Circuit, courts ask "(1) whether the parties entered into a valid agreement to arbitrate, and if so, (2) whether the dispute comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig*., 672 F.3d 113, 128 (2d Cir. 2011). "When enforcing an arbitration agreement, as with any other contract, the parties' intentions control." *Bynum v. Maplebear Inc*., 160 F. Supp. 3d 527, 533–34 (E.D.N.Y. 2016). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 24–25 (1983).

"In deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment." *Edmundson v. Klarna, Inc*., 85 F.4th 695, 702 (2d Cir. 2023). Once the moving party shows the existence of an agreement to arbitrate, "the burden shifts to the party seeking to avoid arbitration to 'show the agreement to be inapplicable or invalid.'" *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102 (2d Cir. 2022). The nonmoving party must

come forward with "specific facts showing that there is a genuine issue for trial." *Cupples v. Valic Fin. Advisors, Inc.*, 2014 WL 4662272, at *3 (E.D.N.Y. Sept. 18, 2014).

## ARGUMENT

### A. Each Plaintiff Validly Agreed to the Terms

Plaintiffs had sufficient notice of the Terms, and manifested their assent to be bound by them, when they created their Temu accounts. Courts have repeatedly addressed and upheld terms-of-use agreements in comparable cases.[2]

Determining whether an online terms-of-use agreement was formed turns on whether a user "had reasonable notice of the terms of use" and "manifested assent" thereto. *Thorne v. Square*, 2022 WL 542383, *7 (E.D.N.Y. 2022). This objective standard is applied through the lens of a "reasonably prudent smartphone user." *Meyer*, 868 F.3d at 77. That is, the standard presumes the plaintiff has some reasonable level of familiarity with using and navigating a smartphone app and signing up for services through it. *See Feld v. Postmates*, 442 F. Supp. 3d 825, 830 (S.D.N.Y. 2020) ("The Court … does not presume that the user has never before encountered an app or entered into a contract using a smartphone.").

Temu's Terms are presented in a common format, known as a "sign-in wrap" agreement, in which the user is given a hyperlink to the Terms at the time of account registration and is expressly informed that, by creating an account, they are agreeing to the Terms. *See Selden v.*

---

[2] To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply "state-law principles of contract formation." *Meyer v. Uber*, 868 F.3d 66, 74 (2d Cir. 2017). Although the Terms are governed by New York law (Ex. B § 18.3), the Court may consult cases applying the law of other jurisdictions, such as Illinois and California, as "the substantive contractual laws of New York, California, and Illinois … are substantively similar with respect to the issue of contract formation." *Berkson v. Gogo*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015); *see also Edmundson*, 85 F.4th at 702–03 ("[T]raditional contract formation law does not vary meaningfully from state to state, … and therefore, our precedents determining the enforceability of arbitration provisions according to the contract-law principles of other states may also be relevant to this dispute.").

*Airbnb*, 4 F.4th 148, 156 (D.C. Cir. 2021) (explaining that "sign-in wrap" consists of a user interface "designed so that a user is notified of the existence and applicability of the site's 'terms of use' when proceeding through the website's sign-in or login process"). Courts consistently uphold sign-in wrap agreements. *See Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 723–24 (E.D.N.Y. 2017) ("[C]ourts in this Circuit have upheld 'Sign–In Wrap' agreements where plaintiffs did not even click an 'I Accept' button, but instead clicked a 'Sign Up' or 'Sign In' button where nearby language informed them that clicking the buttons would constitute accepting the terms of service."); *Fteja v. Facebook*, 841 F. Supp. 2d 829, 839-41 (S.D.N.Y. 2012) (collecting cases).

Applying the objective standard, courts determine the validity of sign-in wrap agreements by "look[ing] to the layout and language of the site to decide whether it would provide a reasonably prudent smartphone user with reasonable notice that a click—i.e., signing up—will manifest assent to an agreement." *Airbnb*, 4 F.4th at 156; *see also Meyer*, 868 F.3d at 75 (same); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018) (applying objective test to evaluate whether a user has adequate notice). A user has sufficient notice of the terms when a link to them is presented conspicuously and placed near the "register" or "continue" button—for example, where the link appears on the same screen, so that the user need not scroll down to find it. *See, e.g.*, *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 453 (E.D.N.Y. 2013) (enforcing agreement where "Terms and Conditions of Service appear on the same screen as the button a prospective user must click in order to move forward in the registration process"); *Johnson v. Uber*, 2018 WL 4503938, *4 (N.D. Ill. 2018) (enforcing agreement where "the app that Johnson used to create his Uber account [stated]: 'By creating an Uber account, you agree to the Terms of Service & Privacy Policy,'" which "appeared in an easy-to-read font on an uncluttered screen, and no scrolling was required to view it"); *Postmates*, 442 F. Supp. 3d at 831 (same).

As these cases make clear, there are no rigid requirements as to exactly how a link to terms of service must be presented in order to be conspicuous. While some courts focus on whether the hyperlink is underlined, in a specific color, or of a certain font size, the weight of authority holds that no single factor is required or determinative. *See, e.g.*, *Postmates*, 442 F. Supp. 3d at 831 ("That the notice and hyperlinks are in a smaller font size does not render the disclaimer inconspicuous; the grey and black color contrast against the white background and are clear to the reasonably prudent user creating an account. The hyperlinks to the TOS and Privacy Policy are in a darker, bolder font than the rest of the text, signifying to a reasonably prudent user that these would be clickable terms."); *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 963 (N.D. Ill. 2020) (finding valid agreement notwithstanding "smaller-font text," where the link "appeared in bold type"). Because "any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider," there are no particular stylings or formats that must be used as long as the agreement is presented to users reasonably and made easily accessible to them. *Selden v. Airbnb, Inc.*, 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016), *aff'd*, 4 F.4th 148 (D.C. Cir. 2021).[3]

The Registration Prompt shown during Temu's registration process satisfies the reasonable notice standard. It presented the Terms to Plaintiffs through a hyperlink appearing in bold font, in an uncluttered format, which was immediately visible on a single screen. Trinh Decl. ¶¶ 5–7; Ex. A. Courts regularly hold that this format provides reasonable notice of the linked terms, and therefore users manifest their assent when they choose to continue. *See, e.g.*, *Shalomayev v. Altice*

---

[3] Judge Cooper in *Selden* aptly described how familiar modern smartphone users are with these exact sort of registration screens and their implications, even eight years ago: "All of us who have signed up for an online service recently will recall the experience. After entering the service provider's website, we were presented with a 'sign up' or 'create account' button prominently displayed on the screen. Next to the button—less prominent, no doubt—was the ubiquitous advisory that, by signing up, we would be accepting the provider's 'terms of service.'" *Id.* at *1.

*USA, Inc.*, 2022 WL 2359406, at *6 (E.D.N.Y. June 30, 2022) (Brodie, J.) (granting motion to compel arbitration where user was "provided a link to the Defendant-affiliated website where Plaintiff could view all of the General Terms of Service"); *Starke v. Gilt Groupe*, 2014 WL 1652225, *3 (S.D.N.Y. 2014) (finding valid agreement because, "[w]hen [the plaintiff] clicked 'Shop Now,' he was informed that by doing so, and giving his email address, 'you agree to the Terms of Membership for all Gilt Groupe sites'"); *Square*, 2022 WL 542383, *8 (finding valid agreement where "a reasonably prudent smartphone user would understand that the terms were connected to the creation of a user account"); *Vimeo*, 464 F. Supp. 3d at 966 (finding valid agreement where screen indicated that plaintiff could "'Create account' and, directly below that, in smaller but still conspicuous font, displayed a statement that read: 'By starting you agree to our terms and privacy policy,' with hyperlinks to the respective documents"); *Lee v. Ticketmaster*, 817 F. App'x 393, 394 (9th Cir. 2020) ("Lee validly assented to Ticketmaster's Terms of Use, including the arbitration provision, [because] each time he clicked the 'Sign In' button … three lines below the button, the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use'…").

The Second Circuit's decision in *Meyer v. Uber Technologies*, *supra*, is instructive. *Meyer* held that a registration screen substantially similar to Temu's provided reasonable notice of Uber's terms of use. *Compare* Ex. A, *with* App. at 1 (applicable registration screen reproduced from the *Meyer* court's opinion). The court explained that the Uber registration screen—just like Temu's—was "uncluttered, with only fields for the user to enter his or her [registration] details, buttons to register for a user account or to connect the user's pre-existing PayPal account or Google Wallet," and a notice stating that "[b]y creating an Uber account, you agree to [Uber's terms of use]," which "appears directly below the buttons for registration." *Meyer*, 868 F.3d 66 at 78; *compare* Ex. A. Further, like Temu's Registration Prompt, "[t]he entire screen [in the Uber application] is visible

at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service." *Meyer*, 868 F.3d 66 at 78. Accordingly, "a reasonably prudent smartphone user would understand that the terms were connected to the creation of a user account." *Id.* Temu's Registration Prompt is substantially the same—if anything, it is less cluttered—so the reasoning in *Meyer* fully applies here.

The Second Circuit recently reached a similar holding in *Edmundson v. Klarna*, 85 F.4th at 705–07, again finding that a registration screen substantially similar to Temu's provided reasonable notice to users. *See* App. at 2 (applicable screen reproduced from the *Klarna* court's opinion). The court rejected the plaintiff's arguments about the font size and color of the hyperlinks to the terms, explaining that "[a]lthough [they] are in a smaller font relative to other text … , they are set apart from surrounding information by being underlined and in a color that stands in sharp contrast to the color of the interfaces[] [*i.e.*, dark text on white background]." *Id.* at 706 ("[B]ecause the interface does not include a plethora of clutter or extraneous information, the notice to Klarna's terms—even if in a smaller font—appears sufficiently conspicuous.").[4]

There is no material basis on which Temu's registration screen could be distinguished from those upheld in *Meyer*, *Klarna*, and the other cases cited above. Consistent with those authorities, Temu's sign-in wrap agreement is valid, and all users who chose to register a Temu account—including Plaintiffs—manifested their assent to be bound by the Terms.

### B. The Arbitration Agreement and Class Action Waiver Are Enforceable

Having formed a valid agreement with Temu, Plaintiffs are bound by its provisions. Settled

[4] Similarly, in *Selden v. Airbnb*, the D.C. Circuit held Airbnb's registration screen sufficient where: (i) "[t]he three buttons [for Facebook, Google, and email registration] plainly provided options for how a user could sign up for Airbnb"; (ii) "[d]irectly below these three options, Airbnb informed the user that 'By signing up, I agree to Airbnb's Terms of Service'"; and (iii) "[t]he buttons appeared in close proximity to the notice and on a single screen." 4 F.4th at 157; *see* App. at 3 (applicable Airbnb registration screen reproduced from the *Airbnb* court's opinion).

law makes clear that the arbitration provision and class action waiver in the Terms apply here and require arbitration of the Plaintiffs' claims on an individual basis.

Courts enforce valid arbitration agreements so long as the dispute at issue comes within their scope. *See In re Am. Exp.*, 672 F.3d at 128. The arbitration provision in the Terms is broad, covering "any dispute … arising out of or relating to" Plaintiffs' use of Temu. Ex. B § 19.1. "Broad clauses, such as those that apply to substantially all disputes arising under the relevant contract, afford a strong presumption of arbitrability for claims arising in connection with their respective contractual arrangements." *Morgikian v. Fid. Invs*., 2022 WL 836950, at *3 (E.D.N.Y. Mar. 21, 2022); *see also Bahoor v. Varonis Sys*., 152 F. Supp. 3d 1091, 1099 (N.D. Ill. 2015) ("New York courts have explained that when an arbitration clause covers 'any dispute' and does not exclude any claims from arbitration, it is an 'all-inclusive provision' that presumptively covers the parties' disputes.").

Plaintiffs' proposed nationwide class definition consists of "[a]ll persons residing in the United States who registered an account with Temu," AC ¶ 174, and Plaintiffs allege they were harmed because Temu "intentionally design[ed] the Temu App, including all associated code, to surreptitiously obtain, improperly gain knowledge of, review, and retain Plaintiffs' and the Class's private and personally identifiable data and content." *Id.* ¶ 320; *see also id.* ¶ 171. Thus, Plaintiffs' claims plainly "arise from" or "relate to" their use of Temu—particularly given that those provisions that are interpreted broadly, consistent with the FAA's mandate that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Calderon v. Breadberry Inc*., 2023 WL 1861639, at *3 (E.D.N.Y. Feb. 9, 2023) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25); *see, e.g., Paramedics Electromedicina v. GE Med. Sys.*, 369 F.3d 645, 654 (2d Cir. 2004) (holding that "arising out of" means that if the "allegations underlying the claims 'touch matters' covered by the parties' … agreements, then those claims must be

arbitrated”).

Even if there were any doubt that Plaintiffs’ claims fall within the arbitration provision’s scope, those questions must be resolved in arbitration, given that the Terms provide that the arbitrator shall have “exclusive authority” to determine the arbitration provision’s enforceability and scope. Ex. B § 19.7. In these circumstances, disputes about the scope or application of the agreement must be delegated to the arbitrator. *See New Prime v. Oliveira*, 586 U.S. 105, 111-12 (2019) (“A delegation clause gives an arbitrator authority to decide even the initial question whether the parties’ dispute is subject to arbitration.”); *Henry Schein v. Archer & White*, 586 U.S. 63, 69 (2019) (“[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.”); *Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 28 (E.D.N.Y. 2023) (“The Delegation Clause evinces a clear and unmistakable intention to delegate the question of arbitrability to the arbitrator. Numerous courts have come to the same conclusion when dealing with identical language and have declined to reach the question of arbitrability.”); *Sinavsky v. NBC*, 2021 WL 4151013, *5 (S.D.N.Y. 2021) (same). As this Court has recognized, consistent with the FAA, “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.” *Calderon*, 2023 WL 1861639, at *3.

Finally, Plaintiffs waived their rights to bring claims against Temu on a classwide basis. Class action waivers like the one in the Terms are enforceable under the FAA and New York law. *See, e.g.*, *Concepcion*, 563 U.S. at 352 (holding such waivers enforceable under the FAA); *Nayal v. HIP Network*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (“Courts applying New York law … have uniformly held that class action waivers are not unconscionable.”). Plaintiffs thus cannot bring any classwide claims in this Court—or in arbitration. *See Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 521 (E.D.N.Y. 2017) (enforcing class action waiver in arbitration clause).

## CONCLUSION

For the foregoing reasons, the Court should compel Plaintiffs to arbitrate on an individual basis and stay the case pending the resolution of Plaintiffs' claims in arbitration.

Dated: April 19, 2024

Respectfully submitted,

*/s/ Serrin Turner*

Serrin Turner
Matthew Valenti
Hadrian Luo
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

*Attorneys for Defendant Whaleco Inc. d/b/a Temu*

**APPENDIX A**

**<u>Exemplar Sign-in Wrap Registration Screens Upheld by Courts</u>**

(Page 1 of 3)

**Uber Registration Screen**

***See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 81 (2d Cir. 2017)**



**APPENDIX A**
(Page 2 of 3)

**Klarna Confirmation Screen**
***See Edmundson v. Klarna, Inc.*, 85 F.4th 695, 711 (2d Cir. 2023)**



**APPENDIX A**
(Page 3 of 3)

| **Airbnb Registration Screen**<br>***See Selden v. Airbnb, Inc.*, 4 F.4th 148, 152 (D.C. Cir. 2021)** |
|---|
|  |