**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

ERIC HU,
EDWIN ANTONIO SURIS,
TIMOTHY SMITH,
ROY NORMAN MORROW,
MING HUI LIN,
NANCY BATALAS,
JAMES LAFATA,
DANIEL DAVID KATTAN,
TRACY EVETTE STARLING,
CHRISTOPH B. OH,
HECTOR ANDREW CORDERO,
YO-YO CHEN,
MANISHA REDDY NARAYAN,
*on behalf of themselves and others similarly situated,*

Plaintiffs, Case No. 23-cv-06962

v.

WHALECO, INC.
d/b/a Temu,

Defendant.

-----------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

TROY LAW, PLLC
John Troy, Esq.
Tiffany Troy, Esq.
Aaron B. Schweitzer, Esq.
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** ..... ii

**PRELIMINARY STATEMENT** ..... 1

**STATEMENT OF FACTS** ..... 1

**APPLICABLE LEGAL STANDARDS** ..... 1

**ARGUMENT** ..... 5

**I. PLAINTIFFS WERE NOT PROVIDED ADEQUATE NOTICE OF THE PROFFERED AGREEMENT TO ARBITRATE** ..... 5

**CONCLUSION** ..... 11

# TABLE OF AUTHORITIES

**Cases**


*Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454 (S.D.N.Y. 2017) .................... 4, 5

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .................... 2

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) .................... 4

*Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003) .................... 2, 3

*Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015) .................... 5, 6, 11

*Berman v. Freedom Fin. Network, LLC*, 30 F. 4th 849 (9th Cir. 2022) .................... 8, 9

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2022) .................... 3

*Crawford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 35 N.Y. 2d 291 (1974) .................... 4

*Eakins v. Whaleco Inc.*, No. 23-cv-00560 (BMJ), 2024 WL1190766, 2024 U.S. Dist. LEXIS 51986 (W.D. Okla. Mar. 5, 2024) .................... 6, 8, 11

*Eakins v. WhaleCo*, 24-6048 (11th Cir.) .................... 8

*Falcon v. Televisaunivision Digit., Inc.*, No. 23-cv-02340 (TPB) (UAM), 2024 WL 1492831, 2024 U.S. Dist. LEXIS 57331 (M.D. Fla. Mar. 29, 2024) .................... 8

*Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557 (2d Cir. 2011) .................... 3

*Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825 (S.D.N.Y. 2020) .................... 5, 6, 7, 11

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) .................... 2

*Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252 (S.D. Fla. Aug. 13, 2021) .................... 8

*Galvez v. JetSmarter, Inc.*, No. 18-cv-10311 (VSB), 2019 WL 4805431, 2019 U.S. Dist. LEXIS 168674 (S.D.N.Y. Sep. 30, 2019) .................... 4

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assoc., LLP*, 6 N.Y. 3d 371 (2006) . 4

*Goldstein v. Fandango Media, LLC*, No. 21-cv-80466 (RAR), 2021 WL 6617447, 2021 U.S. Dist. LEXIS 139153 (S.D. Fla. July 27, 2021) .................... 10

*Harrington v. Atl. Sounding Co.*, 602 F.3d 113 (2d Cir. 2010) .................... 5

*Hastings v. Nifty Gateway, LLC*, No. 22-cv-10517 (AT), 2024 WL 1175196, 2024 U.S. Dist. LEXIS 48609 (S.D.N.Y. Mar. 19, 2024) .................... 4

*Havens v. Hartford Fin. Servs. Grp.*, No. 18-cv-00488 (PGG), 2020 WL 1244235, 2020 U.S. Dist. LEXIS 45083 (S.D.N.Y. Mar. 13, 2020) ........ 4

*Hines v. Overstock.com, Inc.*, 380 F. App'x 22 (2d Cir. 2010) ........ 5

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ........ 2

*Johnson v. Whaleco, Inc.*, No. 23-cv-00403 (GAP) (PRL), 2023 U.S. Dist. LEXIS 184104 (M.D. Fla. Oct. 13, 2023) ........ passim

*Liu v. TD Ameritrade, Inc.*, No. 18-cv-06764 (NGG) (CLP), 2020 WL 2113219, 2020 U.S. Dist. LEXIS 78163 (E.D.N.Y. May 4, 2020) ........ 4

*MetroPCSComms., Inc. v. Porter*, 273 So. 3d 1025 (Fla. 3d DCA 2018) ........ 6

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) ........ passim

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) ........ 3

*Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014) ........ 7, 9, 10

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) ........ 2, 3

*Pincaro v. Glassdoor, Inc.*, No. 16-cv-06870 (ER), 2017 WL 4046317, 2017 U.S. Dist. LEXIS 147517 (S.D.N.Y. Sep. 12, 2017) ........ 4

*Register.com, Inc. v. Verio*, 356 F.3d 393 (2d Cir. 2004) ........ 5

*Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011) ........ 4

*Royal & Sun Alliance Ins., PLC v. E.C.M. Transp., Inc.*, No. 14-cv-03770 (JFK), 2015 WL 5098119, 2015 U.S. Dist. LEXIS 116104 (S.D.N.Y. Aug. 31, 2015) ........ 4

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012) ........ 2, 3, 7

*Soliman v. Subway Franchisee Adver. Fund Trust, Ltd.*, 999 F.3d 838 (2d Cir. 2021) ........ 9, 10

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) ........ 2, 3, 10

*Sphere Drake Ins. Ltd. v. Nat'l Ins. Co.*, 263 F.3d 26 (2d Cir. 2001) ........ 3

*Starke v. Squaretrade, Inc.*, 913 F.3d 279 (2d Cir. 2019) ........ 4

*Temple v. Best Rate Holdings, LLC*, 360 F. Supp. 3d 1289 (M.D. Fla. Dec. 27, 2018) ........ 10

*U.S. Fire. Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813 (2d Cir. 1996) ........ 5

*United States v. Drew*, 259 F.R.D. 449 (C.D. Cal. 2009) ........ 6

*Vitacost.com, Inc. v. McCants*, 210 So.3d 761 (Fla. 4th DCA 2017)........................................... 10

*Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164 (2d Cir. 2011)........................................................................................................................ 2, 3

*WorldCrisa Corp. v. Armstrong*, 129 F.3d 71 (2d Cir. 1997)......................................................... 2

**Statutes**

9 U.S.C. § 2........................................................................................................................ 2

9 U.S.C. § 4........................................................................................................................ 2

Plaintiffs, by and through counsel, hereby submit the following Memorandum of Law in opposition to Defendant's motion to compel arbitration.

## PRELIMINARY STATEMENT

Defendant's registration prompt screen failed to put Plaintiffs on sufficient inquiry notice for registering, and logging into, accounts on the Temu App to manifest assent to Defendant's sign-in-wrap Arbitration Agreement. Accordingly, no agreement to arbitrate was formed, and Defendant's motion to compel arbitration should be denied.

## STATEMENT OF FACTS

"[T]he Temu App requires a user to register an account by displaying a registration prompt that the user must respond to before they can proceed." Trinh Decl. ¶ 6; *see also* Trinh Decl. Ex. A (registration prompt). Registered Temu users also log into the Temu App through the registration prompt, "by inputting their credentials and pressing one of the 'Continue' options." *See id.* ¶ 8. While the registration prompt includes a hyperlink to Temu's Terms of Use at the bottom of the registration prompt, in small-print,[1] light grey, bold text and below several "Continue" options, at no point, not even during initial registration, are users displayed Temu's Terms of Use or asked to manifest their assent by clicking a box that says "I agree," or similar. *See id.*, *passim.*; *see also* Trinh Decl. Ex. A. Plaintiffs are not alleged to have viewed, and did not view, Temu's Terms of Use. *See id.*, *passim.*

## APPLICABLE LEGAL STANDARDS

"The Federal Arbitration Act (the 'FAA') provides that 'a written provision in a contract to settle by arbitration a controversy thereafter arising out of the contract shall be valid, irrevocable,

[1] Adobe Acrobat Pro 2020 identifies the text in the main, orange "Continue" button as being in 13-point Arial font; the text in the other "Continue" buttons as being in 12-point Arial font; and the text "[b]y continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**" as being in 10-point Arial font.

and enforceable." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016) (quoting 9 U.S.C. § 2) (alterations omitted). "[T]he FAA 'embodies a national policy favoring arbitration'… 'founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes.'" *Id.*, at 228–29 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (alterations omitted); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). "But the FAA 'does not require parties to arbitrate when they have not agreed to do so.'" *Id.*, at 229 (quoting *Schnabel*, 697 F.3d at 118).

"The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Nicosia*, 834 F.3d at 229 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)) (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "'This principle "flows inexorably from the fact that arbitration is simply a matter of contract between the parties."'" *Id.* (quoting *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011) (itself quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995))). "The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Id.* (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002)).

"Under the FAA, parties can petition the district court for an order directing that 'arbitration proceed in the manner provided for in such agreement.'" *Nicosia*, 834 F.3d at 229 (quoting 9 U.S.C. § 4). "The district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" *Id.* (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)). "In deciding motions to compel [arbitration], courts apply a 'standard similar to that applicable for a motion for summary

judgment[,]'" which "requires a court to 'consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits.'" *Id.* (quoting *Bensadoun*, 316 F.3d at 175; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2022) (alterations omitted)). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Id.* (citing *Wachovia Bank*, 661 F.3d at 171–72).

"State law principles of contract formation govern the arbitrability question." *Nicosia*, 834 F.3d at 231 (citing *Specht*, 306 F.3d at 27). Section 18.3 of Temu's Terms of Use provides that "any dispute of any sort that might arise" under them "will be governed by the laws of the State of New York, Trinh Decl. Ex. B. While "generally, a choice-of-law clause in a contract will apply to disputes about the existence or validity of that contract," *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004) ("We have applied a choice-of-law clause to determine which laws govern the validity of an agreement to arbitrate.") (citing *Sphere Drake Ins. Ltd. v. Nat'l Ins. Co.*, 263 F.3d 26, 32 n.3 (2d Cir. 2001)), the Second Circuit has also recognized that "[a]pplying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Schnabel*, 697 F.3d at 119. However, where the states at issue "apply substantially similar rules for determining whether the parties have mutually assented to a contract term," "[w]hich state's law applies is… without significance." *Id.* Further, "[u]nder New York choice of law rules, the first inquiry in a case presenting a potential choice of law issue is whether there is an actual conflict of laws on the issues presented.… If not, no choice of law analysis is necessary." *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011). Courts have found that New York's "rules for determining whether the parties have mutually assented to a contract term" are "substantially similar" to: Florida's; Illinois's;

Pennsylvania's; California's; Texas's; Georgia's; Missouri's; Connecticut's; and Washington's. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017); *see also Galvez v. JetSmarter, Inc.*, No. 18-cv-10311 (VSB), 2019 WL 4805431, 2019 U.S. Dist. LEXIS 168674, at *7 n.5 (S.D.N.Y. Sep. 30, 2019); *Starke v. Squaretrade, Inc.*, 913 F.3d 279, 287 n.5, 290 n.7 (2d Cir. 2019); *Royal & Sun Alliance Ins., PLC v. E.C.M. Transp., Inc.*, No. 14-cv-03770 (JFK), 2015 WL 5098119, 2015 U.S. Dist. LEXIS 116104, at *11–12 n.1 (S.D.N.Y. Aug. 31, 2015); *Hastings v. Nifty Gateway, LLC*, No. 22-cv-10517 (AT), 2024 WL 1175196, 2024 U.S. Dist. LEXIS 48609, at *9 n.2 (S.D.N.Y. Mar. 19, 2024); *Pincaro v. Glassdoor, Inc.*, No. 16-cv-06870 (ER), 2017 WL 4046317, 2017 U.S. Dist. LEXIS 147517, at *14 n.6 (S.D.N.Y. Sep. 12, 2017); *Liu v. TD Ameritrade, Inc.*, No. 18-cv-06764 (NGG) (CLP), 2020 WL 2113219, 2020 U.S. Dist. LEXIS 78163, at *13 (E.D.N.Y. May 4, 2020); *Havens v. Hartford Fin. Servs. Grp.*, No. 18-cv-00488 (PGG), 2020 WL 1244235, 2020 U.S. Dist. LEXIS 45083, at *17 (S.D.N.Y. Mar. 13, 2020).

"Under New York law…, '[a] party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate.'" *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 464 (S.D.N.Y. 2017) (quoting *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assoc., LLP*, 6 N.Y. 3d 371 (2006)). "Although the arbitration agreement must be in writing, '[t]here is no requirement that the writing be signed so long as there is other proof that the parties actually agreed on it.'" *Id.* (quoting *Crawford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 35 N.Y. 2d 291 (1974)). "It is common ground that a court rather than an arbitrator should decide whether a valid agreement to arbitrate existed." *Id.* (citing *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 392 (2d Cir. 2011)); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The party seeking to compel arbitration "bears the initial burden of showing the existence of an

agreement to arbitrate." *Applebaum*, 263 F. Supp. 3d at 464 (citation omitted); *but see Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) ("This burden does not require the moving party to show initially that the agreement would be enforceable, merely that one existed."). "Conversely,… the party 'to an arbitration agreement seeking to avoid arbitration,… would bear the burden of showing the agreement to be inapplicable or invalid.'" *Id.* (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010) (alterations omitted)). "'If a party refuses to arbitrate, arbitrability of the dispute hinges only on whether there is an agreement to arbitration and, if so, whether the dispute falls within that agreement.'" *Id.* (quoting *U.S. Fire. Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 816 (2d Cir. 1996)).

## ARGUMENT

### I. PLAINTIFFS WERE NOT PROVIDED ADEQUATE NOTICE OF THE PROFFERED AGREEMENT TO ARBITRATE

"'While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract.'" *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 386 (E.D.N.Y. 2015) (quoting *Register.com, Inc. v. Verio*, 356 F.3d 393, 403 (2d Cir. 2004)). "Internet-based agreements between users of a platform and a service provider have been grouped into four categories: (1) browsewrap; (2) clickwrap; (3) scrollwrap; and (4) sign-in-wrap." *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 829 (S.D.N.Y. 2020) (citing *Berkson*, 97 F. Supp. 3d at 394). Browsewrap and sign-in-wrap agreements are highly similar to one another; likewise, clickwrap and scrollwrap agreements are highly similar to one another. *See*, *e.g.*, *Johnson v. Whaleco, Inc.*, No. 23-cv-00403 (GAP) (PRL), 2023 U.S. Dist. LEXIS 184104, at *5–6 (M.D. Fla. Oct. 13, 2023) (declining to distinguish between browsewrap and sign-in-wrap agreements); *but see Eakins v.*

*Whaleco Inc.*, No. 23-cv-00560 (BMJ), 2024 WL1190766, 2024 U.S. Dist. LEXIS 51986, at *7 (W.D. Okla. Mar. 5, 2024) (distinguishing sign-in-wraps from browsewrap agreements and categorizing Defendant's as the sign-in-wrap). Browsewrap and sign-in-wrap agreements "do not require the user to click on a box showing acceptance of [] 'terms of use' in order to continue," while clickwrap and scrollwrap agreements do. *Berkson* 97 F. Supp. 3d at 399; *c.f. id.*, at 395 ("'Browsewraps can take various forms but basically the website will contain a notice that—by merely using the service of, obtaining information from, or initiating applications within the website—the user is agreeing to and is bound by the site's terms of service.'" (quoting *United States v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009))). Likewise, browsewrap and sign-in-wrap agreements permit users to "complete the[ir] transaction[s] without visiting the page containing the terms and conditions," while clickwrap and scrollwrap agreements automatically display agreements for users to either read or not. *MetroPCSComms., Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018). "Rather, [a] website [using a sign-in-wrap agreement] is designed so that a user is notified of the existence and applicability of the site's 'terms of use' when proceeding through the website's sign-in or login process." *Berkson*, 97 F. Supp. 3d at 399 "Sign-in-wrap agreements have been upheld where: (1) hyperlinked 'terms and conditions' are 'next to the only button that will allow the user to continue use of the website;' (2) 'the user "signed up" to the website with a clickwrap agreement and was presented with hyperlinks to the "terms of use" on subsequent visits;' and (3) 'notice of the hyperlinked "terms and conditions" is present on multiple successive pages on the site.'" *Feld*, 442 F. Supp. 3d at 829 (quoting *Berkson*, 97 F. Supp. 3d at 401 (collecting cases)). "In sum, 'district courts considering similar agreements have found them valid where the existence of the terms was reasonably communicated to the user.'" *Id.* (quoting *Meyer*, 868 F.3d at 76).

"The categorization of types of web-based contracts, however, is not dispositive." *Feld*, 422 F. Supp. 3d at 829 (citing *Meyer*, 868 F.3d at 76). "Where, as here, an offeree claims not to have actual notice of the terms of the contract, the question becomes whether a reasonably prudent person would have been on inquiry notice of the terms such that the offeree would still be bound by the contract." *Id.* at 829–30 (quoting *Meyer*, 868 F.3d at 74–75) (citing *Schnabel*, 697 F.3d at 120 ("[W]here there is no actual notice of the term, an offeree is still bound by the provision if he or she is on inquiry notice of the term and assents to it through the conduct that a reasonable person would understand to constitute assent.")); *see also Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (where "there is no evidence that the website user had actual knowledge of the agreement, the validity of [a] browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract."). "Whether a user is on inquiry notice is a fact-intensive analysis." *Id.* at 830 (citing *Meyer*, 868 F.3d at 76). "Inquiry notice depends on the 'clarity and conspicuousness of arbitration terms.'" *Id.* (quoting *Meyer*, 868 F.3d at 75). "In the context of Internet-based contracts, 'clarity and conspicuousness are a function of the design and content of the relevant interface.'" *Id.* (quoting *Meyer*, 868 F.3d at 75). "An arbitration agreement 'exists where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law.'" *Id.* (quoting *Meyer*, 868 F.3d at 76).

Two federal district courts, reviewing the exact registration prompt at issue here,[2] used by the same Defendant, have held that "Defendant's website design fails this analysis because 'the hyperlink to the Terms is not prominent or particularly remarkable at the bottom of the page where it is featured.'" *Johnson*, 2023 U.S. Dist. LEXIS 184104, at *7 (quoting *Fridman v. 1-800 Contacts,*

---

[2] *C.f. Johnson*, 2023 U.S. Dist. LEXIS 184104, at *2 (registration prompt); Trinh Ex. A (registration prompt).

*Inc.*, 554 F. Supp. 3d 1252, 1263–65 (S.D. Fla. Aug. 13, 2021)); *Eakins*, 2024 U.S. Dist. LEXIS 51986, at *11 (following *Johnson*); *see also Falcon v. Televisaunivision Digit., Inc.*, No. 23-cv-02340 (TPB) (UAM), 2024 WL 1492831, 2024 U.S. Dist. LEXIS 57331, at *7–9 (M.D. Fla. Mar. 29, 2024) (distinguishing an enforceable browsewrap agreement from the presumptively deficient agreement in *Johnson* and thus here). No federal district court to consider the issue has held that Defendant's arbitration agreement is enforceable. According to PACER, Defendant has not appealed *Johnson* to the United States Court of Appeals for the Eleventh Circuit, but has appealed *Eakins* to the United States Court of Appeals for the Tenth Circuit. *See Eakins v. WhaleCo*, 24-6048 (11th Cir.) (as of this writing, Appellant WhaleCo, Inc.'s brief and appendix are due July 8, 2024).

"Most damning to Defendant's attempt to enforce the Agreement [wa]s its use of a very light grey font against a white background, devoid of underlined text or any conspicuous visual cues." *Id.*, at *7–8; *see also Berman*, 30 F.4th at 857 ("A web designer must do more than simply underscore the hyperlinked text in order to ensure it is significantly set apart from the surrounding text. Customary design elements denoting the existence of a hyperlink include the use of a contrasting font color (typically blue) and the use of all capital letters, both of which can alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage."). Defendant's use of bold text for the phrases "Terms of Use" and "Privacy & Cookie Policy," without more, was insufficient "because the font color is itself such a light grey [that] even in bold font the words still appear significantly lighter than the conspicuous black and colorful text used elsewhere on the webpage[,] and do not attract attention." *Id.*, at *8 n.7. The text is here is distinguished from the text in *Meyer*, which the Second Circuit found gave adequate inquiry notice. *See Meyer*, 868 F.3d 66, 78 (2d Cir. 2017). In *Meyer*, the "dark print contrast[ed]

with the bright white background," rather than blending into it. *Id.*; *see also Soliman v. Subway Franchisee Adver. Fund Trust, Ltd.*, 999 F.3d 838, 840 (2d Cir. 2021) (visually reproducing the payment screen and notice at issue in *Meyer*). Furthermore, the phrase "TERMS OF SERVICE & PRIVACY POLICY" was "capitalized… bright blue and underlined," none of which is true here. *Id.*, at 71; *see also Soliman*, 999 F.3d at 840. By contrast, the "camouflaged font [here] contradicts Defendant's assertion that its registration page displays a 'conspicuous hyperlink to its Terms of Use'" and "evince[d] an intent to *conceal* those hyperlinks from conspicuous view, which militates strongly against finding the existence of an agreement to arbitrate." *Id*, at *8 (emphasis in original) (citation omitted); *see also Berman v. Freedom Fin. Network, LLC*, 30 F. 4th 849, 856–57 (9th Cir. 2022) ("The text disclosing the existence of the terms and conditions on these websites is the antithesis of conspicuous. It is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye. The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else.") (citing *Nguyen*, 763 F.3d at 1178 n.1). Like in *Berman*, and unlike *Meyer*, Defendant's registration prompt was "cluttered" with distracting elements, including not only the four or five "Continue" buttons but also advertisements at the very top of the screen, about as far as possible from the Terms of Use hyperlink as possible, for "[f]ree shipping [o]n all orders" and "[f]ree returns [w]ithin 90 days," meant to catch the user's attention and induce them to register an account with Temu. *See* Trinh Decl. Ex. A; *see also Berman*, 30 F. 4th at 857 ("[T]he textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text. Far from meeting the requirement that a webpage must take steps 'to capture the user's attention and secure her assent,' the design and content of these webpages draw the user's attention away from the most

important part of the page."); *c.f. Meyer*, 868 F.3d at 78 ("The Payment Screen is uncluttered, with *only* fields for the user to enter his or her credit card details, buttons to register for a user account or to connect the user's pre-existing PayPal account or Google Wallet to the Uber account, and the warning that '[b]y creating an Uber account you agree to the TERMS OF SERVICE & PRIVACY POLICY.'") (capitals in original; italics added); *see also Soliman*, 999 F.3d at 840.

"The inconspicuous nature of the hyperlinks [wa]s further compounded by [their] poor placement on the website." *Id.* (citing *Temple v. Best Rate Holdings, LLC*, 360 F. Supp. 3d 1289, 1304 (M.D. Fla. Dec. 27, 2018) (distinguishing between placing terms and conditions above versus below the action button on a webpage)); *see also Goldstein v. Fandango Media, LLC*, No. 21-cv-80466 (RAR), 2021 WL 6617447, 2021 U.S. Dist. LEXIS 139153, at *9 (S.D. Fla. July 27, 2021) ("It is not reasonable to expect a user to continue reading below the highly conspicuous purchase button[3]"). (citing *Specht*, 306 F.3d at 31–32 (finding that a reasonably prudent person may not be aware of a notice and license terms below a download button); *Nguyen*, 763 F.3d at 1179 ("[C]lose proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.")); *Vitacost.com, Inc. v. McCants*, 210 So.3d 761, 762 (Fla. 4th DCA 2017) ("Uniformly, courts have declined to enforce 'browsewrap' agreements when the hyperlink to the terms and conditions is buried at the bottom of the page, and the website never directs the user to review them."). "Here, the faint text linking to Defendant's browsewrap agreement is located at the bottom of the webpage beneath four [five on Apple devices] buttons and far below the bright-orange "Continue" button. This placement does not put a reasonably prudent user on inquiry notice." *Id.* (citing *Nguyen*, 763 F.3d at 1177).

---

[3] Both Fandango's "Purchase" button, and Defendant's "Continue" button, were a bright orange. *See Goldstein*, 2021 U.S. Dist. LEXIS 139153, at *9; *c.f.* Trinh Ex. A.

In addition to being substantially separated from the "Continue" button—and the "Continue" button not being "the only button that will allow the user to continue use of the website," sharing that function with four or five other vertically-stacked buttons and being the farthest-away of those buttons from the hyperlink to the Terms of Use—the other factors highlighted in *Berkson* and summarized in *Feld* which would favor enforcing a sign-in-wrap arbitration agreement are absent here. *See Feld*, 442 F. Supp. 3d at 829 (citing *Berkson*, 97 F. Supp. 3d at 394). It is not the case that users of the Temu App "'signed up' to the [app] with a clickwrap agreement and w[ere] presented with hyperlinks to the 'terms of use' on subsequent visits," *id.*; rather, users registered, and subsequently signed in, using the same registration prompt page. *See* Trinh Decl. ¶¶ 6, 8.[4] Nor is there any evidence that "notice of the hyperlinked 'terms and conditions' [was] present on multiple successive pages on the site." *Feld*, 442 F. Supp. 3d at 829; *see also* Trinh Decl. ¶ 7 (only noting that the hyperlink to the Temu App's Terms of Use appears on the registration prompt, and nowhere else).

## **CONCLUSION**

For all the above-stated reasons, Defendant's motion to compel arbitration should be denied.

Dated: Flushing, NY
May 31, 2024

TROY LAW, PLLC

*/s/ John Troy*
John Troy, Esq.
Tiffany Troy, Esq.
Aaron B. Schweitzer, Esq.
41-25 Kissena Boulevard
Suite 110

[4] "Plaintiff[s'] subsequent use[s] of the App" after registration, including loggings-in through the registration prompt screen, do not weigh in favor of arbitration, because a notice that "was inconspicuous when Plaintiff[s] created [their] account[s]… if unaltered, [does not] bec[o]me any clearer over time." *Eakins*, 2024 U.S. Dist. LEXIS 51986, at *11–12; *c.f. Meyer*, 868 F.3d at 79 (it was the "objectively reasonable notice of the terms" that made Uber users' assent to the Terms of Use by registration unambiguous.)

Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com
*Attorneys for Plaintiffs*