**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ERIC HU, EDWIN ANTONIO SURIS, TIMOTHY SMITH, ROY NORMAN MORROW, MING HUI LIN, NANCY BATALAS, JAMES LAFATA, DANIEL DAVID KATTAN, TRACY EVETTE STARLING, CHRISTOPH B. OH, HECTOR ANDREW CORDERO, YO-YO CHEN, and MANISHA REDDY NARAYAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WHALECO INC. d/b/a TEMU,<br><br>Defendant. | ) | Case No. 1:23-cv-06962-MKB-RML<br><br>District Judge Margo K. Brodie<br><br>Magistrate Judge Robert M. Levy |

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

Date: June 21, 2024


Serrin Turner
Matthew Valenti
Hadrian Luo
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................1

ARGUMENT ....................2

A. Sign-In Wrap Agreements Are Routinely Enforced in the Second Circuit ....................2

B. Plaintiffs Had Reasonable Notice of the Terms ....................3

C. The Oklahoma and Florida Decisions That Plaintiffs Selectively Cite Are Unpersuasive and Should Not Be Followed Here ....................8

CONCLUSION ....................11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Berman v. Freedom Fin. Network*,
30 F.4th 849 (9th Cir. 2022) ....................................................................................6, 7

*Bolling v. Bobs Disc. Furniture, LLC*,
2024 WL 1327357 (E.D.N.Y. Mar. 27, 2024) ...................................................................5

*Curtis v. JPMorgan Chase Bank*,
2024 WL 283474 (S.D.N.Y. Jan. 25, 2024) ......................................................................6

*Eakins v. Whaleco Inc.*,
2024 WL 1190766 (W.D. Okla. Mar. 5, 2024)..........................................................8, 9, 10

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....................................................................................... *passim*

*Falcon v. TelevisaUnivision Digital, Inc.*,
2024 WL 1492831 (M.D. Fla. Mar. 29, 2024) ..................................................................7

*Feld v. Postmates*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)...........................................................................7, 9

*Fontanez v. Whaleco, Inc.*,
53-3032CA-00374 (Fla. Polk County Ct. Nov. 15, 2023)..........................................8, 10

*Garcia v. Nabfly, Inc.*,
2024 WL 1795395 (S.D.N.Y. Apr. 24, 2024).................................................................4, 5

*Johnson v. Whaleco, Inc.*,
2023 U.S. Dist. LEXIS 184104 (M.D. Fla. Oct. 13, 2023) ...................................... *passim*

*Meyer v. Uber*,
868 F.3d 66 (2d Cir. 2017)........................................................................................ *passim*

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ............................................................................................7

*Saizhang Guan v. Uber Techs., Inc.*,
236 F. Supp. 3d 711 (E.D.N.Y. 2017) ................................................................................2

*Selden v. Airbnb, Inc.*,
4 F.4th 148 (D.C. Cir. 2021)..........................................................................................5, 8

*Smith v. RPA Energy, Inc.*,
2024 WL 1869325 (S.D.N.Y. Apr. 30, 2024)....................................................................7

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
999 F.3d 828 (2d Cir. 2021)...........................................................................................2, 4, 5

## PRELIMINARY STATEMENT

Plaintiffs do not dispute that Temu's arbitration provision is enforceable and applies to their claims. Nor do they contest that, before registering an account with Temu, every user is shown a prompt advising that, by continuing, they agree to Temu's Terms of Use ("Terms"), which contain the arbitration provision (the "Prompt"). Rather, all Plaintiffs do is nitpick the font and placement of the Prompt. These quibbles are meritless. The Prompt was readily visible on an uncluttered screen, and any reasonably prudent smartphone user—who would already be familiar with these sorts of registration screens and prompts—would have understood that, by continuing, they were agreeing to the Terms, which they could review if they wished by tapping on the bolded link in the Prompt.

The Second Circuit has repeatedly enforced terms of use presented in a similar fashion. Plaintiffs provide no cogent basis to distinguish these binding precedents, but instead rely on isolated and unpersuasive lower-court decisions from outside this circuit. Plaintiffs' reliance on those cases is misplaced. Second Circuit authority—and even some of Plaintiffs' cited cases—make clear that there are no artificial rules requiring companies to use a particular font size or color, or a particular placement, in giving users notice of their terms of use. Rather, as long as the registration screen's overall design provides adequate notice, that is enough. Under this rubric, and under Second Circuit precedent that is squarely on point, Temu's Prompt easily passes muster. Accordingly, the Court should grant Temu's motion and compel Plaintiffs to arbitrate.[1]

[1] Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added. Citations to "Ex. A" refer to the exhibit attached to the June 21, 2024 Declaration of Serrin Turner, and citations to "Appendix" refer to the appendix to Defendant's opening brief.

## ARGUMENT

### A. Sign-In Wrap Agreements Are Routinely Enforced in the Second Circuit

Plaintiffs' opposition brief begins with a confused discussion about the various ways that online terms of use may be presented to users—*i.e.*, "browsewrap," "clickwrap," and "sign-in wrap" agreements—and the circumstances in which each is enforced. Pl. Br. at 5-7. To be clear, the Prompt here is a sign-in wrap agreement, which is undisputedly commonplace and routinely enforced in and out of the Second Circuit. Def. Br. at 6-8. A sign-in wrap agreement simply means that the user is notified of the applicable terms at the time of account registration and is informed that, by creating an account, they are agreeing to those terms. *Id.* at 6; *see also, e.g., Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 723–24 (E.D.N.Y. 2017) ("[C]ourts in this Circuit have upheld 'Sign–In Wrap' agreements where plaintiffs did not even click an 'I Accept' button, but instead clicked a 'Sign Up' or 'Sign In' button where nearby language informed them that clicking the buttons would constitute accepting the terms of service.").

As Plaintiffs acknowledge at certain points, *see* Pl. Br. at 6-7, there is no particular set of specifications that a sign-in wrap agreement must meet in order to be valid—nor could there be, given the wide variation among the websites and mobile apps on which they appear. *See Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 842 (2d Cir. 2021) ("The panoply of technological variations available to companies in the internet/smartphone age, as it relates to the form and content of communication interfaces with consumers, makes any bright-line rule for reasonable conspicuousness in this arena extremely difficult to discern … . Instead, each situation will continue to require careful examination on a case-by-case basis under the applicable legal standard."); *Meyer v. Uber*, 868 F.3d 66, 75 (2d Cir. 2017) ("Of course, there are infinite ways to design a website or smartphone application … ."). Instead, all that is required is that "a reasonably prudent smartphone user" would have been on inquiry notice of the terms. *Meyer*, 868 F.3d at 77.

Temu's Prompt satisfies this standard, and nothing in Plaintiffs' opposition undermines that conclusion.

### B. Plaintiffs Had Reasonable Notice of the Terms

Reproduced here again is the Prompt, which Plaintiffs were shown when they created their accounts with Temu:




As Defendant has explained, the Prompt readily satisfies the Second Circuit test for sign-in wrap agreements: it is readily visible on a single, uncluttered page that does not require the user

to scroll down to find it. Def. Br. at 8-10. Second Circuit authority makes clear that this suffices to put a reasonably prudent user on notice. *See Meyer*, 868 F.3d 66 at 78 ("The entire screen [in the Uber application] is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service."); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 705 (2d Cir. 2023) (approving sign-in wrap agreement where prompt was "uncluttered" and contents of screen were "visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of Klarna's terms"); *Garcia v. Nabfly, Inc.*, 2024 WL 1795395, at *4 (S.D.N.Y. Apr. 24, 2024) ("Contrary to Plaintiff's argument, however, the 'Terms of Use' hyperlink is located in close proximity to the button, on a single screen that can be viewed in its entirety without scrolling."); *see also* Def. Br. at Appendix A (containing screenshots of sign-in screens from *Meyer* and *Klarna*).

Plaintiffs do not and cannot distinguish the Prompt here from the registration prompts upheld by the Second Circuit in *Meyer* and *Klarna*, or in any other cases cited in Defendant's brief. Tellingly, Plaintiffs do not even mention *Klarna*—even though it is the most recent Second Circuit case either party cited, and it upheld a registration prompt that, if anything, was less conspicuous than Temu's. Def. Br. at Appendix A at 2. In fact, Plaintiffs do not cite a *single* analogous Second Circuit case supporting their arguments. Instead, as discussed further below, *infra* Pt. C, Plaintiffs rely on out-of-circuit case law, mainly two district court cases from Florida and Oklahoma.

The one Second Circuit case concerning conspicuous notice that Plaintiffs do cite in their argument, *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828 (2d Cir. 2021), *cited in* Pl. Br. at 9-10, is not analogous and if anything undermines their position. The *Soliman* court held that a hard-copy advertisement referencing the company's terms of use was insufficient to create a valid agreement where "the reference to the URL for the website containing [the] terms and conditions … was buried within a fine-print paragraph with over eighty other words, was not

set off in any way within that paragraph (by color, emphasis, etc.)," and "[did] not even advise the consumer that, by texting the keyword to Subway, they [we]re agreeing to any terms or conditions contained on the Subway website." *Soliman*, 999 F.3d at 835, 838. Accordingly, the Second Circuit distinguished it from *Meyer* because, in that case, "the user saw a single screen on their phone with a 'REGISTER' button, below which appeared the following text: 'By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY,' and included hyperlinks to documents titled 'Terms of Service' and 'Privacy Policy.'" *Id.* at 840. *Soliman* is distinguishable from the facts here for precisely the same reasons.

Rather than point to any analogous Second Circuit case law, Plaintiffs grumble over the Prompt's aesthetics—*e.g.*, that it used supposedly 10-point font rather than 12-point (Pl. Br. at 1 n.1), or gray color instead of black (*id.* at 8). These trivial disputes are irrelevant, because what matters is the *overall design* of the registration screen in which the Prompt appears, not discrete aspects of it in isolation. *See, e.g.*, *Meyer*, 868 F.3d at 75 ("[I]n the context of web-based contracts, … clarity and conspicuousness are a function of the design and content of the relevant interface."); *Soliman*, 999 F.3d at 836 (courts must analyze "the website or advertisement design as a whole"); *Garcia*, 2024 WL 1795395, at *4 ("Where a hyperlink appears sufficiently 'conspicuous in light of the whole interface,' courts have found that it is reasonably conspicuous … ."). Plaintiffs have no reasonable basis to challenge the Prompt as inconspicuous in the context in which it appears.

*First*, while Plaintiffs complain that the Prompt is placed at the "bottom of the [registration] page," Pl. Br. at 7, 10, this complaint makes little sense given the layout of the page: Again, it is contained entirely within one screen and does not require the user to scroll down to see the Prompt (or anything else); thus, putting the Prompt at the "bottom" of the page does not make it hard to find. Notably, the hyperlinks in *Meyer* and *Klarna* were also placed at or near the bottom of their respective registration screens (*see* Def. Br. at Appendix A at 1-2); *see also* Def. Br. at Appendix

A at 3 (citing *Selden v. Airbnb, Inc.*, 4 F.4th 148, 152 (D.C. Cir. 2021) (showing Airbnb's screen with hyperlinks at bottom)). Accordingly, the Prompt's placement at the bottom of Temu's registration page in no way renders it inconspicuous. *See Bolling v. Bobs Disc. Furniture, LLC*, 2024 WL 1327357, at *2 (E.D.N.Y. Mar. 27, 2024) ("Because Plaintiff easily could have reviewed the full terms by clicking 'See Terms and & Conditions,' displayed conspicuously *at the bottom of the purchase page*, she received sufficient notice of the arbitration clause.").

Indeed, it is not clear where else on the screen the Prompt could reasonably have been placed. For example, if it were between the first "Continue" button and the next option—"Continue with Google"—Plaintiffs would surely argue that such an arrangement impermissibly "sandwiched" the Prompt between two buttons. *See infra* n.3 (discussing Plaintiffs' citation to *Berman*). Likewise, if the Prompt were at the top of the page, Plaintiffs would undoubtedly argue that this is too far removed from the four "Continue" buttons in the bottom half of the screen, which a user can use to register an account just as much as the first button. Against these alternatives, the location Temu selected for the placement of the Prompt was entirely reasonable. Placing it at the end of the list of registration options signals that the user's choice to continue past *any* of these options—*i.e.*, the choice to create an account through *any* of the means available—constitutes acceptance of the Terms. *See, e.g., Curtis v. JPMorgan Chase Bank*, 2024 WL 283474, at *3 (S.D.N.Y. Jan. 25, 2024) ("[W]hen terms are linked on an uncluttered interface and temporally and spatially coupled with the mechanism for manifesting assent, and the user does not need to scroll beyond what is immediately visible to find the terms, … the interface provided reasonably conspicuous notice of the existence of contractual terms.").

*Second*, Plaintiffs assert that the Prompt is "camouflage[d]" by use of "a very light grey font against a white background, devoid of underlined text or any conspicuous visual cues." Pl. Br. at 8 (citing *Johnson v. Whaleco, Inc.*, 2023 U.S. Dist. LEXIS 184104, *7-8 (M.D. Fla. Oct. 13,

2023)). That is hardly a fair description of Temu's Prompt, which is perfectly visible against the white background of the screen, and whose hyperlink to the Terms is further contrasted by the use of bold font. That the font color is gray does not somehow hide it from view.[2] *See* Def. Br. at 8 (citing *Feld v. Postmates*, 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) ("[T]he grey and black color contrast against the white background and are clear to the reasonably prudent user creating an account. The hyperlinks to the TOS and Privacy Policy are in a darker, bolder font than the rest of the text, signifying to a reasonably prudent user that these would be clickable terms.")). And even Plaintiffs' own case law contradicts their arguments by making clear that bold font denotes a hyperlink to a reasonable user. *See Falcon v. TelevisaUnivision Digital, Inc.*, 2024 WL 1492831, at *4 (M.D. Fla. Mar. 29, 2024), *cited in* Pl. Br. at 8 ("Furthermore, although the words 'Terms of Use' were not underlined, they were bolded, indicating the presence of a hyperlink."); *see also Klarna*, 85 F.4th at 707 (explaining that "no particular features [of a hyperlink] must be present"); *Smith v. RPA Energy, Inc.*, 2024 WL 1869325, at *5 (S.D.N.Y. Apr. 30, 2024) (finding that the fact that hyperlink was not in blue font or underlined "hardly matter[ed]" because a reasonable user would have known from context that it was a hyperlink).[3]

---

[2] Plaintiffs' complaints about the allegedly "faint" gray font color also make no sense in the context of the other components of the registration screen. The field on the screen that prompts users to enter their "Email or phone number"—which Temu obviously wants users to see so that it can collect the information needed to register their account—uses the same *or lighter* gray font color. Thus, the use of gray font is plainly an aesthetic choice, which Temu is entitled to make—not an effort to "conceal" any information. Pl. Br. at 9.

[3] None of the other cases Plaintiffs cite, *see* Pl. Br. at 8-9, supports their position. The only Second Circuit case they cite is *Soliman*, but as noted above, that case—involving a hard-copy ad handed out at a restaurant—has no relevance here. Otherwise, Plaintiffs cite *Johnson* (M.D. Fl.), *Nguyen* (9th Cir.), and *Berman* (9th Cir.). *Johnson* is addressed below, *infra* Pt. C, and *Nguyen* and *Berman* are both easily distinguishable. *Nguyen* involved pure browsewrap: The defendant's website contained a "'Terms of Use' hyperlink located in the bottom left-hand corner of every page" but the link was not presented as part of any sign-in flow and users were never prompted to "demonstrate assent." *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1174, 1179 (9th Cir. 2014). By contrast, Temu users are specifically told that by continuing past the registration page, they are agreeing to the Terms. And in *Berman*, the Ninth Circuit found that a registration screen failed to provide reasonably conspicuous notice to consumers where the notice statement was "in a tiny gray font … so small that it is barely legible to the naked eye" and was "sandwiched" between two larger buttons. *Berman v. Freedom Fin. Network*, 30 F.4th 849, 854, 856-57 (9th Cir. 2022). By contrast, Temu's Prompt is clearly legible and not "sandwiched" between anything, and the reference to the "Terms of Use" is in bold font with

*Third*, Plaintiffs claim that Temu's registration screen was "cluttered" with "distracting" references to "free shipping" and "free returns." Pl. Br. at 9. This is belied by even a cursory look at the screen. The logos for free shipping and returns appear at the very top and occupy a small portion of the overall design. The remainder of the screen—the vast majority of it—is dedicated to the options users have to create an account, followed by the accompanying Prompt. Those options are essential to the registration screen and commonplace in creating e-commerce accounts, as can be seen, for example, in the registration screens at issue in *Meyer* and *Airbnb*, which included similar options for creating accounts. *See* Def. Br. Appendix A at p. 1, 3. The Prompt is logically placed immediately below the last of these options. Nothing about the compact logos at the top about free shipping or returns—which would be relevant to a user considering whether to create an account—clutters the screen or otherwise obscures the Prompt.

Accordingly, Plaintiffs' flyspecking does not provide any basis to find a lack of notice. The Prompt was not somehow hidden from the user. It was immediately visible on an uncluttered screen, directly under the list of registration options. Any reasonable user could readily see the Prompt and would understand what it was for. That is all that Second Circuit precedent requires.

### C. The Oklahoma and Florida Decisions That Plaintiffs Selectively Cite Are Unpersuasive and Should Not Be Followed Here

Having no Second Circuit precedent on their side, Plaintiffs rely almost exclusively on two unpublished out-of-circuit district court decisions holding that Temu's Prompt failed to provide conspicuous notice of the Terms. *See Eakins v. Whaleco Inc.*, 2024 WL 1190766 (W.D. Okla. Mar. 5, 2024); *Johnson*, 2023 U.S. Dist. LEXIS 184104. Tellingly, they fail to mention another case brought against Temu, also in Florida, that reached the opposite conclusion in holding that

first letters capitalized, which sets it apart from the rest of the sentence. *See, e.g.*, *Klarna*, 85 F.4th at 706 ("[T]he notice to Klarna's terms—even if in a smaller font—appears sufficiently conspicuous.").

Temu's Prompt was sufficient to create a valid agreement. *See* Ex. A (opinion in *Fontanez v. Whaleco, Inc.*, 53-3032CA-00374 (Fla. Polk County Ct. Nov. 15, 2023)). The decisions cited by the Plaintiffs are unpersuasive and their reasoning is incompatible with Second Circuit precedent. *See supra* at 10; Def. Br. at 10, Appendix A at p. 1-2.

Both cases Plaintiffs cite rest on the same flawed reasoning as Plaintiffs' brief, mischaracterizing the Prompt and seeking to micromanage the design of the registration screen. The *Johnson* court objected to "the use of a very light grey font against a white background, devoid of underlined text or any conspicuous visual cues" and "its poor placement on the website … at the bottom of the webpage beneath four other buttons and far below the bright-orange 'Continue' button." 2023 U.S. Dist. LEXIS 184104, at *8. In doing so, the *Johnson* court mischaracterized Temu's sign up flow as a "browsewrap" agreement, as if the reference to the Terms was buried at the bottom of a "website," as opposed to being readily visible on a single uncluttered screen. *See id.* at *7-8. The *Eakins* court relied on similar reasoning and found that the Prompt appeared "in relatively small font at the bottom of the screen—spatially decoupled from the attention-grabbing orange 'Continue' button that users click to create their account," and that the hyperlink to the Terms "appears in grey font against a white backdrop" without "the traditional hallmarks of hyperlinked text." 2024 WL 1190766, at *3-4.[4]

As explained above, these views do not withstand scrutiny and are inconsistent with the Second Circuit's decisions in *Klarna* and *Meyer*. As to font, in *Klarna*, the Second Circuit found the prompt there sufficient even though it used relatively small, gray font against a white background. *See Klarna*, 85 F.4th at 706; Def. Br. at Appendix A at p. 2; *see also Feld*, 442 F.

---

[4] The *Eakins* and *Johnson* decisions also incorporated low-resolution copies of Temu's registration screen, potentially distorting their analyses. The Court should instead rely on the screenshot included with Defendant's briefs here—viewed on screen rather than on a printed page—for the most accurate depiction of how the screen would appear to a user live.

Supp. 3d at 831 (S.D.N.Y. 2020) (finding "[t]hat the notice and hyperlinks are in a smaller font size does not render the disclaimer inconspicuous" and that gray font was sufficiently visible against white background of screen). Here, similarly, the Prompt's font might be slightly smaller and somewhat grayer than the surrounding text, but hardly to a degree that would render it unnoticeable. Moreover, the suggestion that a company must use the "traditional hallmarks of hyperlinked text"—*i.e.*, blue font—is anachronistic and was specifically rejected in *Klarna*. *See* 85 F.4th at 707 (rejecting argument that hyperlink was deficient because it was not in "blue font," as there are "no particular features that must be present to satisfy the reasonably conspicuous standard"). As to the placement of the Prompt, the idea that it is "spatially decoupled" from the relevant buttons is manifestly unfounded. The Prompt appears immediately below the last "Continue" option; there is no justification to require it to be next to the first "Continue" button, as that is not the only option a user has for registering an account. Similarly, in *Meyer*, the Second Circuit upheld the prompt there even though it appeared at the bottom of the screen and was separated from the larger "Register" button by two other buttons for payment options. *See Meyer*, 868 F.3d at 82; Def. Br. at Appendix A at p. 1. Accordingly, this Court should disregard *Eakins* and *Johnson* and follow Second Circuit precedent instead.

Plaintiffs' reliance on out-of-circuit case law is not only misguided but selective. They fail to mention the *Fontanez* decision, which reached the opposite conclusion as *Eakins* and *Johnson*. The *Fontanez* court correctly held that Temu's "full screen user interface design with the 'Continue' button just above the bolded hyperlink to the Terms of Use is conspicuous enough to put a reasonably prudent person on inquiry notice." Ex. A at 4 (noting that "[t]he word 'Terms of Use' was in bold letters" and "Fontanez did not have to scroll to see the hyperlink for the Terms of Use"). For the reasons stated above, the *Fontanez* opinion is in line with Second Circuit authority, and the *Eakins* and *Johnson* opinions are not.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the motion to compel and stay the case pending the resolution of Plaintiffs' claims in arbitration.

Dated: June 21, 2024

Respectfully submitted,

*/s/ Serrin Turner*

Serrin Turner
Matthew Valenti
Hadrian Luo
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

*Attorneys for Defendant Whaleco Inc. d/b/a Temu*