**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ERIC HU, EDWIN ANTONIO SURIS, TIMOTHY SMITH, ROY NORMAN MORROW, MING HUI LIN, NANCY BATALAS, JAMES LAFATA, DANIEL DAVID KATTAN, TRACY EVETTE STARLING, CHRISTOPH B. OH, HECTOR ANDREW CORDERO, YO-YO CHEN, and MANISHA REDDY NARAYAN, on behalf of themselves and all others similarly situated, | ) | Case No. 1:23-cv-06962-MKB-RML |
| | ) | District Judge Margo K. Brodie |
| Plaintiffs, | ) | Magistrate Judge Robert M. Levy |
| v. | ) | |
| WHALECO INC. d/b/a TEMU, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO ZIBOUKH PLAINTIFFS' AMICUS BRIEF**

Date: August 19, 2024

Serrin Turner
Matthew Valenti
Hadrian Luo
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

# TABLE OF CONTENTS

Page


PRELIMINARY STATEMENT ....................1

ARGUMENT ....................2

I. TEMU'S PROMPT PROVIDES REASONABLE NOTICE THAT USERS ARE AGREEING TO THE TERMS OF USE ....................2

A. The Prompt Satisfies the Second Circuit Standard ....................2
B. The *Ziboukh* Plaintiffs' Arguments Are Identical to Ones the Second Circuit Has Repeatedly Rejected ....................4
C. The Cases the *Ziboukh* Plaintiffs Cite Do Not Reflect Current Law and Are Easily Distinguishable in Any Event ....................5
D. The Prompt Is Not "Cluttered" ....................6
E. The Three Out-of-Circuit Decisions Holding the Terms Unenforceable Are Inconsistent with Second Circuit Law and Should Be Disregarded ....................7

II. ALL OTHER ISSUES HAVE BEEN DELEGATED TO THE ARBITRATOR ....................8

A. The *Ziboukh* Plaintiffs' Argument That the Batching Provision Is Ambiguous Is Delegated to the Arbitrator (and Baseless in Any Event) ....................9
B. The *Ziboukh* Plaintiffs' Arguments That Certain Provisions Are Unconscionable Are Delegated to the Arbitrator (and Baseless in Any Event) ....................12

1. The Batch Arbitration Clause Is Not Procedurally Unconscionable ....................13
2. The Arbitration Agreement Is Not Substantively Unconscionable ....................15

III. DISCOVERY IS NEITHER REQUIRED NOR WARRANTED ....................20

CONCLUSION ....................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arnaud v. Doctor's Assocs. Inc.*,
2019 WL 4279268 (E.D.N.Y. Sept. 10, 2019), *aff'd*, 821 F. App'x 54 (2d Cir. 2020) ....................6

*Bank v. WorldCom, Inc.*,
2002 WL 171629 (N.Y. Sup. Ct. Jan. 24, 2002)....................14

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....................16

*Billboard Media, LLC v. Wray*,
2024 WL 2941270 (S.D.N.Y. Apr. 25, 2024)....................9

*Davenport v. Nvidia Corp.*,
2024 WL 832387 (N.D. Cal. Feb. 28, 2024) ....................16

*Dish Network Corp. v. Ace Am. Ins. Co.*,
431 F. Supp. 3d 415 (S.D.N.Y. 2019), *aff'd*, 21 F.4th 207 (2d Cir. 2021)....................8

*Doctor's Assocs., LLC v. Tripathi*,
794 F. App'x 91 (2d Cir. 2019) ....................9

*Eakins v. Whaleco Inc.*,
2024 WL 1190766 (W.D. Okla. Mar. 5, 2024)....................8

*Edmundson v. Klarna*,
85 F.4th 695 (2d Cir. 2023) ....................3, 5, 7, 14

*Edmundson v. Klarna, Inc.*,
642 F. Supp. 3d 256 (D. Conn. 2022), *rev'd and remanded*, 85 F.4th 695 (2d Cir. 2023) ....................4

*Feld v. Postmates*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)....................2

*Fontanez v. Whaleco, Inc.*,
No. 53-3032CA-00374 (Fla. Polk County Ct. Nov. 15, 2023)....................8

*Gillman v. Chase Manhattan Bank, N.A.*,
73 N.Y.2d 1 (1988) ....................16

*Heckman v. Live Nation Entertainment, Inc.*,
686 F. Supp. 3d 939 (N.D. Cal. 2023) ....................15

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) ....................19, 20

*Johnson v. Whaleco Inc.*,
2023 U.S. Dist. LEXIS 184104 (M.D. Fla. Oct. 13, 2023) ....................8

*La Barbera v. Elite Ready Mix Corp.*,
2009 WL 2707358 (E.D.N.Y. Aug. 27, 2009)....................11

*Lee v. Am. Exp. Travel Related Servs., Inc.*,
348 F. App'x 205 (9th Cir. 2009) ....................13

*MacClelland v. Cellco P'ship*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022) ....................14, 15, 18

*McGrath v. DoorDash*,
2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) ....................18

*Meeg v. Heights Casino*,
2020 WL 1493658 (E.D.N.Y. Mar. 27, 2020)....................11

*Meyer v. Kalanick*,
200 F. Supp. 3d 408 (S.D.N.Y. 2016), *vacated sub nom. Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) ....................5

*Meyer v. T-Mobile USA Inc.*,
836 F. Supp. 2d 994 (N.D. Cal. 2011) ....................13

*Meyer v. Uber*,
868 F.3d 66 (2d Cir. 2017)....................2, 3, 7

*Ng v. HSBC Mortg. Corp.*,
2011 WL 3511296 (E.D.N.Y. Aug. 10, 2011)....................12

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)....................6

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979)....................8

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................9

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984)....................13

*Selden v. Airbnb, Inc.*,
2016 WL 6476934 (D.D.C. Nov. 1, 2016), *aff'd*, 4 F.4th 148 (D.C. Cir. 2021) ....................3

*Smith v. Whaleco Inc.*,
2024 WL 3513800 (W.D. Okla. July 23, 2024)....................8

*SOL Grp. Mktg. Co. v. Lines*,
2016 WL 205444 (S.D.N.Y. Jan. 15, 2016) ....................14

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
999 F.3d 828 (2d Cir. 2021)....................2

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002)....................11

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019)....................5, 6, 11, 22

*State v. Wolowitz*,
468 N.Y.S.2d 131 (App. Div. 1983)....................16

*Tsiampalis v. Monarch Life Ins. Co.*,
2007 WL 188673 (E.D.N.Y. Jan. 23, 2007) ....................10

**OTHER AUTHORITIES**

AAA Consumer Clause Registry,
https://apps.adr.org/ClauseRegistryUI/faces/org/adr/extapps/clauseregistry/view/pages/clauseRegistry.jsf....................12

National Consumer Disputes Advisory Committee, "Consumer Due Process Protocol Statement of Principles,"
https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf ....................12

Pursuant to the Court's July 18, 2024 order (granting ECF No. 48), Defendant Whaleco Inc. d/b/a Temu ("Temu") hereby responds to the amicus brief (ECF No. 45) filed by the plaintiffs in *Ziboukh et al. v. Whaleco Inc. et al.* (No. 24-cv-03733) (the "*Ziboukh* Plaintiffs") opposing Temu's motion to compel arbitration in the above-captioned case (the *Hu* litigation).

## PRELIMINARY STATEMENT[1]

The Court should grant Temu's motion to compel arbitration for the reasons stated in Temu's briefs (ECF Nos. 37, 40). The *Ziboukh* Plaintiffs' amicus brief offers no relevant arguments—let alone persuasive ones—beyond what the parties to this litigation have already briefed.

The amicus brief first challenges Temu's account registration prompt ("Prompt"), claiming it provides inadequate notice that users are assenting to the Terms when they create an account. But the Prompt is uncluttered and the reasonably prudent Internet user can easily see and understand the hyperlink to the Terms it contains, without having to scroll down. That suffices to form an agreement under Second Circuit authority. In arguing otherwise, the *Ziboukh* Plaintiffs recycle the same arguments raised by the *Hu* Plaintiffs—*e.g.*, quibbling over the placement of the hyperlink, or its font color or size, etc. Not only were these arguments thoroughly addressed in the *Hu* briefing, but the Second Circuit squarely rejected similar arguments in both the *Meyer* and *Klarna* cases (*see infra*)—which represent binding authority that the *Ziboukh* Plaintiffs cannot cogently distinguish from the facts here.

[1] Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added. Citations to "Def. Br." and "Def. Reply" refer to Temu's opening and reply briefs, respectively, in support of its motion to compel arbitration (ECF Nos. 37, 40), and citations to the "Terms" refer to Temu's Terms of Use attached to Defendant's opening brief (ECF No. 38-2).

The remainder of the amicus brief is not even relevant to deciding Temu's motion to compel arbitration. The *Ziboukh* Plaintiffs spend many pages challenging the *enforceability* of discrete provisions within the arbitration agreement. But none of those arguments bears on whether an agreement to arbitrate was *formed* in the first place (it was), and the Terms provide that disputes about the enforceability of any part of the agreement are delegated exclusively to the arbitrator. In any event, the *Ziboukh* Plaintiffs' enforceability arguments are meritless, resting on repeated mischaracterizations and misinterpretations of the arbitration agreement.

Accordingly, the Court should reject the arguments in the amicus brief and grant Temu's motion to compel arbitration.

## ARGUMENT

### I. TEMU'S PROMPT PROVIDES REASONABLE NOTICE THAT USERS ARE AGREEING TO THE TERMS OF USE

In determining whether a registration screen is sufficient to allow for the creation of a valid agreement, Second Circuit courts ask whether the overall design of the prompt puts a "reasonably prudent smartphone user" on notice that they would be agreeing to the applicable terms of use. Def. Br. at 6-10; *Meyer v. Uber*, 868 F.3d 66, 77 (2d Cir. 2017); *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 836 (2d Cir. 2021) (courts must analyze "the website or advertisement design as a whole"); *Feld v. Postmate*s, 442 F. Supp. 3d 825, 830 (S.D.N.Y. 2020) ("The Court … does not presume that the user has never before encountered an app or entered into a contract using a smartphone."). As Temu has amply explained, this standard is satisfied here.

#### A. The Prompt Satisfies the Second Circuit Standard

The *Ziboukh* Plaintiffs devote much of their argument to nitpicking the details of the Prompt, but tellingly they avoid reproducing an image of it. That is because its overall design easily satisfies the Second Circuit standard. *See* ECF No. 38-1. The Prompt is uncluttered and

appears on a single screen, and the hyperlink to the Terms appears in bold font, adjacent to the buttons for creating an account—clearly visible to a reasonably prudent user. *E.g.*, *Meyer*, 868 F.3d 66 at 78 ("The entire screen [in the Uber application] is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service."); *Edmundson v. Klarna*, 85 F.4th 695, 705-07 (2d Cir. 2023) (similar). The Prompt is all the more conspicuous given that it is shown as the user is creating an account—when they *expect* to be prompted to agree to the company's terms of service as part of the registration process. *Meyer*, 868 F.3d 66 at 78 ("[A] reasonably prudent smartphone user would understand that the terms were connected to the creation of a user account."); *see also Selden v. Airbnb, Inc.*, 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) ("Any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider."), *aff'd*, 4 F.4th 148 (D.C. Cir. 2021).

Nonetheless, the *Ziboukh* Plaintiffs—just like the *Hu* Plaintiffs—resort to quibbling with various aesthetic aspects of the Prompt, such as the particular styling and placement of the hyperlink on the screen. *See* Amicus Br. at 10-11 (claiming, for example, that "the Temu hyperlink was not underlined or capitalized" and was therefore inconspicuous). These arguments were thoroughly addressed in Temu's prior briefing with the *Hu* Plaintiffs, *see* Def. Br. at 8-10; Def. Reply at 5-7, and fare no better when advanced by the *Ziboukh* Plaintiffs. Again, as the Second Circuit has explained, "there are 'no particular features that must be present to satisfy the reasonably conspicuous standard.'" *Klarna*, 85 F.4th at 707. Thus, the *Ziboukh* Plaintiffs have no basis to argue that any particular styling or placement was required.

### B. The *Ziboukh* Plaintiffs' Arguments Are Identical to Ones the Second Circuit Has Repeatedly Rejected

Not only do the *Ziboukh* Plaintiffs fail to account for the Second Circuit's decisions in *Meyer* and *Klarna*, they make the exact same arguments the Second Circuit rejected in those cases. For example, the chart below compares the *Ziboukh* Plaintiffs' arguments with those credited by the district court opinion in *Klarna*, which the Second Circuit reversed:

| ***Ziboukh* Plaintiffs' Argument** | **District Court Opinion in *Klarna*, Reversed by Second Circuit** |
|---|---|
| • The Prompt is "separated by multiple other buttons and statements." *See* Amicus Br. at 8.<br>• "[T]here are multiple buttons and statements in larger font." *Id.* at 10.<br>• The Prompt is "separated from the giant, bright orange 'Continue' button by four other buttons … ." *Id.* at 13.<br>• "[I]t is separated from the 'continue' button by a series of intervening buttons and text" *Id.* at 13 n.15. | "First, there are multiple different items attracting the user's attention on this screen. Initially, the user must select how they intend to pay for their purchase, deciding between no fewer than six different options." *Edmundson v. Klarna, Inc.*, 642 F. Supp. 3d 256, 268 (D. Conn. 2022), *rev'd and remanded*, 85 F.4th 695 (2d Cir. 2023). |
| • The Prompt "appears in grey font against a white backdrop." *Id.* at 7.<br>• It is "not distinguishable from the surrounding text (through bright blue coloring or underlining for example)." *Id.* at 10.<br>• "[T]he Temu hyperlink was not underlined or capitalized and was in similar color to the surrounding text." *Id.* at 11.<br>• "[T]he link to Temu's Terms appears in small grey font." *Id.* at. 13. | "Second, … the text surrounding the hyperlinked terms and conditions is gray on a white background. Such color selection certainly does not stand out" because "they are not the characteristic blue that a user would associate with hyperlinks." *Id.* |
| • The Prompt "is located at the bottom of the webpage." *Id.* at 6.<br>• It is "spacially [sic] decoupled." *Id.* at 6, 7.<br>• It is "not adjacent to the button manifesting assent, but rather at the bottom of the page." *Id.* at 10. | "Third, the hyperlinks are only minimally spatially related to the place where the user would manifest assent to the terms contained in the hyperlinked agreements." *Id.* |
| • The Prompt "appears in relatively small font." *Id.* at 6.<br>• "[T]he statement regarding agreement to | "The text containing the hyperlinks is also the smallest text on the screen, even smaller than other disclaimers." *Id.* |

| | |
|---|---|
| the Terms is in the smallest font on the screen." *Id.* at 9.<br>• It is "in the smallest font on the page." *Id.* at 10. | |

The Second Circuit found the district court's acceptance of these arguments to be reversible error. *See Klarna*, 85 F.4th at 705-706 (finding it inconsequential that "the hyperlinks to Klarna's terms [we]re in a smaller font" and were not blue, because the notice to the user was "sufficiently conspicuous in light of the whole interface" (cleaned up)).

Similarly, prior to *Klarna*, the district court in *Meyer* relied on some of the same arguments now advanced by the *Ziboukh* Plaintiffs—arguments that the Second Circuit rejected on appeal. *See Meyer v. Kalanick*, 200 F. Supp. 3d 408, 420 (S.D.N.Y. 2016) ("Uber's statement about 'Terms of Service' appears far below and in much smaller font. … [T]he hyperlink stating 'Terms of Service & Privacy Policy' is located far beneath the 'Register' button and takes on the appearance of an afterthought."), *vacated sub nom. Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017). The Second Circuit has thus specifically rejected the sort of fussy criticisms asserted here by the *Ziboukh* Plaintiffs, making clear that it is instead the overall design of a registration screen that matters. There is no basis for any different result here.

### C. The Cases the *Ziboukh* Plaintiffs Cite Do Not Reflect Current Law and Are Easily Distinguishable in Any Event

Having no cogent basis to distinguish Temu's Prompt from those upheld in *Meyer* and *Klarna*, the *Ziboukh* Plaintiffs cite cases that do not reflect the current state of law in the Second Circuit—because they all predate *Klarna* or are not even from within this Circuit—and are each distinguishable in any event. To take one example, the *Ziboukh* Plaintiffs rely heavily on *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 294 (2d Cir. 2019), *see, e.g.*, Amicus Br. at 7-8, even though the case bears no resemblance to this one. *Starke* did not even involve an account registration

screen. It involved a user who purchased a product on Amazon, where the "purchase page[] did not provide [him] with notice that terms governing the sale would be provided via hyperlink." *Id.* at 292. Instead, the user eventually received a series of emails, one of which contained "a hyperlink in the bottom left corner, labeled 'Terms & Conditions.'" *Id*. at 285. The email "d[id] not advise him that he would be deemed to agree to the contract terms in the document to be found by clicking that link." *Id.* at 293.

It is unclear how the *Ziboukh* Plaintiffs could conclude from these facts that "the presentation of the Terms here is even more problematic than in *Starke*." Amicus Br. at 8; *compare* Appendix 1 hereto (reproduction of email in *Starke* containing terms of use hyperlink). To the contrary, if anything, *Starke* supports the proposition that Temu's Prompt is sufficient, because the Second Circuit explained there that "[t]o provide conspicuous notice of the [terms and conditions], SquareTrade could have simply included a noticeable hyperlink on the Amazon purchase page directing users to review the terms and conditions." *Starke*, 913 F.3d at 294. That is exactly what the Prompt does here at the point of registration.[2]

**D. The Prompt Is Not "Cluttered"**

The *Ziboukh* Plaintiffs also contend that the Prompt is "highly cluttered," Amicus Br. at 13, but it is obviously not, as one can easily see from looking at the Prompt. *See* ECF No. 38-1. The inclusion of multiple buttons reflects multiple options for creating an account, which does not

[2] The remaining cases cited by the *Ziboukh* Plaintiffs, Amicus Br. at 8-10, are similarly off-point. *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237 (2d Cir. 2016) (emphasizing cluttered page where "there appear to be between fifteen and twenty-five links on the Order Page, and various text is displayed in at least four font sizes and six colors (blue, yellow, green, red, orange, and black), alongside multiple buttons and promotional advertisements"); *Arnaud v. Doctor's Assocs. Inc.*, 2019 WL 4279268, at *6 (E.D.N.Y. Sept. 10, 2019) (emphasizing that "no text anywhere on the webpage indicated that the user was agreeing to any additional terms, and the fact that the link was labeled 'T&Cs' provides little or no notice to the user that he might be bound by additional information contained at that link"), *aff'd*, 821 F. App'x 54 (2d Cir. 2020).

make the screen "cluttered"—as *Meyer*, *Klarna*, and other cases recognize, but that the *Ziboukh* Plaintiffs continue to ignore. Def. Br. at 8-10; Def. Reply at 8-10; *Klarna*, 85 F.4th at 705 (finding screen uncluttered where there were "three buttons to select either to register for a new account or to connect to two types of pre-existing accounts"); *Meyer*, 868 F.3d at 78 (finding screen "uncluttered, with only fields for the user to enter his or her credit card details, buttons to register for a user account or to connect the user's pre-existing PayPal account or Google Wallet to the Uber account"). Nor do the "Free shipping" and "Free returns" labels at the top of the Prompt render it cluttered—a contention that the *Ziboukh* Plaintiffs do not explain. Amicus Br. at 13.

The *Ziboukh* Plaintiffs try to switch the subject to supposed "clutter" on the Temu *website*, stating that "the gamified nature of the website only adds to the clutter, which in turn further undermines any claim users were provided adequate notice." Amicus Br. at 14. This argument makes no sense. Whether or not Temu's *website* is "gamified" has nothing to do with the Prompt on the app being "cluttered," and certainly would not affect whether a user registering an account would receive sufficient notice of the Terms.

### E. The Three Out-of-Circuit Decisions Holding the Prompt Is Inconspicuous Are Inconsistent with Second Circuit Law and Should Be Disregarded

Finally, for all of the reasons set forth above, the three district court decisions from the Western District of Oklahoma and Middle District of Florida on which the *Ziboukh* Plaintiffs heavily rely[3] should be disregarded, as they rest on the same sorts of arguments the Second Circuit specifically rejected in *Meyer* and *Klarna*. Nor do any of those decisions have preclusive effect on this Court, as the *Ziboukh* Plaintiffs claim. Amicus Br. at 15-16. The decisions are inconsistent

---

[3] *See* Amicus Br. at 2 (citing *Eakins v. Whaleco Inc.*, 2024 WL 1190766 (W.D. Okla. Mar. 5, 2024) and *Johnson v. Whaleco Inc.*, 2023 U.S. Dist. LEXIS 184104 (M.D. Fla. Oct. 13, 2023)); Notice of Supplemental Authority from *Ziboukh* Plaintiffs dated July 26, 2024 (citing *Smith v. Whaleco Inc.*, 2024 WL 3513800 (W.D. Okla. July 23, 2024)).

with Second Circuit law, and they are also inconsistent with the opinion of another court in Florida that held that Temu's Prompt was sufficiently conspicuous. *See* ECF No. 40-1 (decision from *Fontanez v. Whaleco, Inc.*, No. 53-3032CA-00374 (Fla. Polk County Ct. Nov. 15, 2023) (granting Temu's motion to compel arbitration)). These factors prevent the application of non-mutual offensive collateral estoppel. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979) ("Allowing offensive collateral estoppel may … be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant."); *Dish Network Corp. v. Ace Am. Ins. Co*., 431 F. Supp. 3d 415, 427 (S.D.N.Y. 2019) (rejecting offensive collateral estoppel where there was already one case decision inconsistent with three others, and the prior decisions were in different circuits where courts were bound by different precedent), *aff'd*, 21 F.4th 207 (2d Cir. 2021).[4]

## II. ALL OTHER ISSUES HAVE BEEN DELEGATED TO THE ARBITRATOR

The rest of the Amicus Brief presents a motley mix of arguments regarding the interpretation and enforceability of certain provisions of the arbitration agreement. *See* Amicus Br. at 16-25. These arguments are meritless; but more importantly, they are irrelevant to Temu's

[4] The *Ziboukh* Plaintiffs' argument that the Florida and Oklahoma decisions make the entire arbitration agreement unenforceable by contract, Amicus Br. at 15, is borderline frivolous. Plaintiffs rely on language in the Terms' severability provision, which provides that if the *batching provision* of the arbitration agreement is found *invalid or unenforceable*, both parties agree that the entire arbitration agreement is null and void. *See* Terms § 19.11. But the Florida and Oklahoma decisions did not address the Terms' batching provision at all, let alone find it invalid or unenforceable. Indeed, the decisions did not address *any* issue of validity or enforceability whatsoever; instead, the issue was whether an agreement to arbitrate had been *formed*, not whether any aspect of it was valid or enforceable. *See Smith*, 2024 WL 3513800 at *4; *Eakins*, 2024 WL 1190766 at *4; *Johnson*, 2023 U.S. Dist. LEXIS 184104, *10. Nor could a court rule that the batching provision is unenforceable, as that issue is delegated exclusively to the arbitrator under Section 19.7 of the Terms (*infra* at 11).

Motion to Compel, because they have nothing to do with whether an arbitration agreement was *formed*. Instead, they concern issues that the Terms delegate exclusively to the arbitrator.

The delegation clause in Temu's arbitration agreement provides that "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the *interpretation* or application of the Arbitration Agreement, including the *enforceability*, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement … ." Terms § 19.7. This broad delegation provision is subject only to limited exceptions not applicable here. Accordingly, any challenges to the arbitration agreement's specific provisions as vague, unconscionable, or unenforceable—like those the *Ziboukh* Plaintiffs attempt to raise—must instead be made in arbitration. *See, e.g., Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71-72 (2010) (finding that a clause granting the arbitrator "exclusive authority to resolve any dispute related to the … enforceability … of this Agreement" delegated the question of whether the agreement was unconscionable to the arbitrator); *Doctor's Assocs., LLC v. Tripathi*, 794 F. App'x 91, 94 (2d Cir. 2019) (summary order) ("With respect to the enforceability of the arbitration agreement, we agree with the district court that the arbitration agreement clearly and unmistakably delegated this issue for the arbitrator's determination in the first instance."); *Billboard Media, LLC v. Wray*, 2024 WL 2941270, at *7 (S.D.N.Y. Apr. 25, 2024) (finding language similar to Temu's delegation clause "clearly and unmistakably delegates to the arbitrator issues of arbitrability, including gateway questions" of interpretation, enforceability and unconscionability).

### A. The *Ziboukh* Plaintiffs' Argument That the Batching Provision Is Ambiguous Is Delegated to the Arbitrator (and Baseless in Any Event)

The *Ziboukh* Plaintiffs first argue that there was no mutual assent for the parties to arbitrate their claims because a particular subsection of the agreement—requiring the batching of related

arbitration claims—is supposedly "inconsistent," "convoluted," and "at odds with the AAA rules." Amicus Br. at 16-18. That argument is wrong on several fronts.

As an initial matter, whatever bone the *Ziboukh* Plaintiffs have to pick with a discrete *subsection* of the arbitration agreement, they cannot deny that the parties mutually assented to arbitration in general because there is nothing unclear about that in the Terms. The Terms say in plain language—printed in bold and all-caps at the top of the document—that "**SECTION 19 CONTAINS, AMONG OTHER THINGS, AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND US BE RESOLVED BY BINDING AND FINAL ARBITRATION.**" Terms § 1.4. The language could not be any clearer that, by agreeing to the Terms, a user is agreeing to submit to arbitration.

Any argument that the batching provision is vague would instead be an issue of contract *interpretation*—not *formation*—and as such would be delegated exclusively to the arbitrator. Again, the Terms delegate to the arbitrator any disputes about the interpretation of any portion of the arbitration agreement. Terms § 19.7. Accordingly, if the *Ziboukh* or *Hu* Plaintiffs want to raise a dispute as to how the batching provision should be interpreted or applied to them, they may do so in arbitration; but any ambiguity (if there was one) would not negate their assent to the overall agreement. *See, e.g.*, *Tsiampalis v. Monarch Life Ins. Co.*, 2007 WL 188673, at *4 (E.D.N.Y. Jan. 23, 2007) ("A mere ambiguity in a contract does not justify a finding that the ambiguous terms are void. Nothing prohibits parties from entering into contracts with terms that are ambiguous."); *see also La Barbera v. Elite Ready Mix Corp.*, 2009 WL 2707358, at *4 (E.D.N.Y. Aug. 27, 2009) (finding that the court must evaluate the entire contract to avoid adopting

an interpretation that would result in inconsistency between provisions or render a particular provision superfluous).[5]

In any event, the supposed ambiguities the *Ziboukh* Plaintiffs claim to find in the batch arbitration provision do not exist. *See* Amicus Br. at 16-17. They argue that requiring batch arbitrations in certain circumstances (Terms § 19.9), while otherwise prohibiting consolidated or collective arbitration (*id.* § 19.4), is somehow impermissibly inconsistent. It is not. The Terms simply contain a general prohibition on parties seeking relief "on a class, collective, representative, or mass action basis," while also providing, as an *exception* to that general rule, that if one law firm seeks to file similar arbitration demands on behalf of 25 or more individuals, then for the sake of efficiency, the parties agree that the arbitrator will group the demands into batches decided by the same arbitrator. Terms § 19.9. An exception to a general rule does not create an "ambiguity"—let alone one that affects contract formation.

The *Ziboukh* Plaintiffs are also wrong that the Terms' batching provision is unenforceable because it is not reflected in—and therefore supposedly "irreconcilable" with—the AAA rules. *See* Amicus Br. at 17 (arguing that "the AAA rules that the clause incorporates do not mention 'batch arbitration' at all"). To the contrary, the AAA rules *encourage* the parties to arrive at their

[5] None of the cases the *Ziboukh* Plaintiffs cite (*Meeg*, *Starke*, and *Specht*), Am. Br. at 16, held that an alleged ambiguity in a batching (or any other) provision within an arbitration agreement negates the entire arbitration agreement. In each of these cases, the court denied a motion to compel arbitration because it was insufficiently clear that the plaintiff agreed to arbitrate *at all*—a concern, as explained above, that is not present here. *See e.g.*, *Meeg v. Heights Casino*, 2020 WL 1493658, at *4 (E.D.N.Y. Mar. 27, 2020) (denying motion to compel arbitration where a handbook containing the arbitration requirement contained the disclaimer "informational only" and specified that it did not create "contractual rights or obligations with respect to any matters contained"); *Starke*, 913 F.3d at 289 (denying motion to compel arbitration because parties did not have sufficient notice of the arbitration provision); *Specht v. Netscape Commc'ns Corp*., 306 F.3d 17, 30 (2d Cir. 2002) (denying motion to compel arbitration because parties could not "clearly comprehend that the agreement to arbitrate exists").

own agreements to make the arbitration process more efficient: "Parties are encouraged to agree to additional processes that make the resolution of their Mass Arbitration more efficient, such as … *An agreement to assign multiple cases to a single arbitrator*, making the scheduling of conferences and hearings more efficient." ECF No. 46-7 at 3. There is thus no inconsistency here, as the AAA rules plainly allow what the Terms require.[6]

### B. The *Ziboukh* Plaintiffs' Arguments That Certain Provisions Are Unconscionable Are Delegated to the Arbitrator (and Baseless in Any Event)

The *Ziboukh* Plaintiffs' remaining arguments expressly challenge the arbitration agreement's enforceability. Specifically, they challenge various provisions—relating to informal dispute resolution, arbitration demand requirements, batching of related demands (again), attorneys' fees for frivolous demands, and public injunctive relief—as "unconscionable." *See* Amicus Br. at 18-25. Given that these arguments on their face concern the arbitration agreement's enforceability, they are plainly delegated to the arbitrator. Terms § 19.7 (providing that the "arbitrator shall have exclusive authority to resolve any Dispute … related to … the *enforceability*" of the agreement); *see Ng v. HSBC Mortg. Corp.*, 2011 WL 3511296, at *8 (E.D.N.Y. Aug. 10, 2011) ("Under New York law, unconscionability is an affirmative defense to the *enforcement* of a contract.").

---

[6] The *Ziboukh* Plaintiffs' concerns about the batching provision being inconsistent with AAA rules also make little sense given that the AAA already reviewed Temu's arbitration agreement—including its batch arbitration clause—and added it to their Consumer Clause Registry. *See* AAA Consumer Clause Registry, https://apps.adr.org/ClauseRegistryUI/faces/org/adr/extapps/clauseregistry/view/pages/clauseRegistry.jsf (search for "Temu" reflects that the Terms were accepted on April 1, 2024). That means the AAA has determined that the arbitration clause "substantially and materially compl[ies] with the due process standards of the AAA Consumer Due Process Protocol." ECF No. 46-5 at 5. This protocol requires giving users "clear and adequate notice of the arbitration provision and its consequences" and "fair hearings" at a "reasonable cost." *See* National Consumer Disputes Advisory Committee, "Consumer Due Process Protocol Statement of Principles," https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf.

For the sake of completeness, however, even if these arguments could be adjudicated in court, they are baseless.

**1. The Batch Arbitration Clause Is Not Procedurally Unconscionable**

The *Ziboukh* Plaintiffs argue that the batching provision is procedurally unconscionable because there was no real negotiation of the contract and consumers would be surprised by the agreed-upon terms of the bargain. *See* Amicus Br. at 19.

As an initial matter, neither the *Ziboukh* nor the *Hu* Plaintiffs have standing to challenge the enforceability of the arbitration batching provision—whether viewed as an issue of procedural or substantive unconscionability—because it does not currently apply to them. The batching provision applies only "in the event that there are twenty-five (25) or more individual Arbitration Notices of a substantially similar nature filed against us *by or with the assistance of the same law firm, group of law firms, or organizations*." Terms § 19.9 (emphasis added). Here, there are only seventeen named Plaintiffs represented by counsel in the *Ziboukh* case (only twelve of which claim to be Temu users), and only thirteen named Plaintiffs represented by counsel in the *Hu* case; and of course none of the Plaintiffs represented by either counsel have submitted any arbitration notices. Accordingly, Plaintiffs in either case are not currently subject to batch arbitration and have no standing to challenge the batch arbitration provision. *See Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1003 (N.D. Cal. 2011) (finding that plaintiff lacked standing to challenge provision in arbitration agreement because it had not been applied to her); *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1019–20 (1984) (challenge to constitutionality of arbitration scheme was not ripe for resolution because the plaintiff had not been injured by the provision); *Lee v. Am. Exp. Travel Related Servs., Inc.*, 348 F. App'x 205, 207 (9th Cir. 2009) ("Plaintiffs cannot satisfy the requirements of Article III because they have not yet been injured by the mere inclusion of

these provisions in their agreements, nor is the threat of future harm from such provisions sufficiently imminent to confer standing.").

Regardless, the batch arbitration provision is not procedurally unconscionable. The *Ziboukh* Plaintiffs first complain that the provision is offered on a "take-it-or-leave-it" basis. *See* Amicus Br. at 20. But the fact that there was no arms' length negotiation over this provision is hardly unusual in the online consumer context, as "terms are usually unnegotiated and consumers often proceed without reading the fine print." *Klarna,* 85 F.4th at 703. New York courts generally decline to find online agreements procedurally unconscionable on this basis because consumers are always free to take their business elsewhere. *See, e.g., Bank v. WorldCom, Inc.*, 2002 WL 171629, at *6 (N.Y. Sup. Ct. Jan. 24, 2002) (finding that the consumer was not in a "take it or leave it" position because they could buy a competitor's product instead); *SOL Grp. Mktg. Co. v. Lines*, 2016 WL 205444, at *7 (S.D.N.Y. Jan. 15, 2016) ("[T]here is no contract of adhesion where the complaining party had the option of engaging in business with another company or individual besides the defendant before signing the contract.").[7]

The *Ziboukh* Plaintiffs also argue that courts have found "novel and one-sided" batch arbitration clauses to be procedurally unconscionable. *See* Amicus Br. at 18-21.[8] But the decision on which they primarily rely, *Heckman v. Live Nation Entertainment, Inc.*, 686 F. Supp. 3d 939

[7] Even the court in *MacClelland*—a case on which the *Ziboukh* Plaintiffs rely—acknowledged that while online consumer contracts are not individually negotiated, this at most gives rise to a "minimal" level of procedural unconscionability. *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1034 (N.D. Cal. 2022) ("[T]he agreement here is a contract of adhesion, but the adhesive nature of the agreement presents only a minimal finding of procedural unconscionability.").

[8] It bears mention that batch arbitration clauses are no longer "novel." Leading arbitration providers like AAA have incorporated mass arbitration procedures into their consumer rules and encourage parties to reach an agreement to resolve disputes efficiently. For example, as noted above, the AAA's mass arbitration rules encourage parties to agree to processes for the efficient resolution of those cases, including "an agreement to assign multiple cases to a single arbitrator, making the scheduling of conferences and hearings more efficient." ECF No. 46-7 at 3.

(N.D. Cal. 2023), is not at all analogous to the facts here. In *Heckman,* the defendant changed arbitration providers in the middle of litigation, *id.* at 946, leading the court to find high levels of procedural unconscionability because the defendant had allegedly made this change to its terms without notice and was seeking to apply the revised terms retroactively with respect to the claim in that case. *Id.* at 953. The court also held that nothing in the revised terms indicated that consumers were agreeing to mass arbitration procedures, which were instead contained solely in the new provider's rules (which were allegedly difficult to parse), and that the language in the terms instead left consumers with the impression that they had agreed to "individual arbitration." *Id.* at 956.

The concerns raised in *Heckman*—even assuming it was correctly decided—are not remotely present here. The batch arbitration provision was in effect at all times that Plaintiffs used the Temu app, and Temu's Terms were not modified in the middle of litigation to change arbitration providers or add a batch arbitration provision. *See* ECF No. 38 at ¶¶ 9-10. Users are also permitted to opt out of any updated agreement within 30 days, a critical factor not present in *Heckman*. *See* Terms § 19.10; *cf. Heckman*, 686 F. Supp. 3d at 962 ("[C]ritically, there is no opportunity for claimants to opt out."); *MacClelland*, 609 F. Supp. 3d at 1043 (finding ability to opt out to be key factor in unconscionability analysis). Finally, the batch arbitration provision here is clearly spelled out in the Terms themselves (*see supra* at 12-13; Terms § 19.9), rather than being located on solely on the arbitration provider's website as in *Heckman*. 686 F. Supp. 3d at 956.

**2. The Arbitration Agreement Is Not Substantively Unconscionable**

The *Ziboukh* Plaintiffs argue that various provisions in the arbitration agreement are substantively unconscionable. *See* Amicus Br. at 21-25. None of them are. Substantive unconscionability turns on whether a contract unreasonably favors one party over the other. *See Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 12 (1988). Unconscionability operates on

a sliding scale, such that where, as here, there is little to no procedural unconscionability, substantive unconscionability must be substantial. *See State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (App. Div. 1983) (explaining that "procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa"). The *Ziboukh* Plaintiffs fail to meet the requisite standard as to any component of the arbitration agreement.[9]

**Informal Dispute Resolution Requirement.** The *Ziboukh* Plaintiffs first challenge the informal dispute resolution process contained in the Terms, which simply requires the complaining party to have a single phone call or videoconference with the other party before filing an arbitration demand. The provision is mutually applicable, easy to comply with, permits consumers to have their attorney present, and tolls any relevant statutes of limitations while discussions take place. *See* Terms § 19.2. Procedures such as these are routinely found enforceable because they do not place an undue burden on consumers and provide sufficient procedural protections for all parties. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) (enforcing Coinbase's informal dispute resolution process because it did not place a time restriction on a party to bring the claim); *Davenport v. Nvidia Corp.*, 2024 WL 832387, at *6 (N.D. Cal. Feb. 28, 2024) (finding that an agreement requiring users to contact the company to give it a chance to resolve any complaints informally was not the "kind of onerous hoop jumping that would render the pre-arbitration procedures a substantively unconscionable roadblock to relief"). Contrary to what the *Ziboukh* Plaintiffs contend, *see* Amicus Br. at 22, Temu is required to participate in the conference (which is inherent in the fact that it is a "conference") and is required to do so in good faith. Terms § 19.2

[9] Moreover, even if any part of the agreement were to be found invalid, with the exception of Section 19.9, that part of the agreement may be severed and the rest of the agreement can remain in full force and effect. *See* Terms § 19.11.

("[W]e will personally meet and confer telephonically or via videoconference, in a good faith effort to resolve informally…"). The *Ziboukh* Plaintiffs do not and cannot explain why requiring the parties to engage in a brief, informal discussion prior to any arbitration demand being filed unconscionably favors Temu. Nor do the *Ziboukh* Plaintiffs cite a single case finding a similar requirement unconscionable; instead, they cite *MacClelland*, Amicus Br. at 22, but that case did not even address an informal dispute resolution provision, let alone find such a provision to be unconscionable.

**Arbitration Demand.** The *Ziboukh* Plaintiffs next attempt to challenge the Terms' filing requirements for arbitration demands, which require a statement of the legal claims being asserted and their factual bases, a description of the remedy sought and an accurate, good-faith calculation of the amount in controversy, a statement certifying completion of the Informal Dispute Resolution process, and evidence that the requesting party has paid any filing required fees. The *Ziboukh* Plaintiffs inexplicably assert that these requirements "apply only to consumers." Amicus Br. at 22. They cite nothing for that assertion, and it is directly contradicted by the Terms, which make clear that the requirements are mutual. *See* Terms § 19.5 ("If the Parties are not able to resolve the Dispute through the mandatory informal dispute resolution process referenced above, *either party may initiate an arbitration proceeding by sending a demand* to the other party that describes the nature and basis for the claim *and includes all of the information required* in the arbitration notice."). Further, the effort needed to comply with the filing requirements is no greater than the effort involved in filing a complaint in court, which both the *Hu* Plaintiffs and the *Ziboukh* Plaintiffs can clearly muster (as evidenced by the 525-paragraph Amended Complaint in *Hu* and the 396-paragraph Amended Complaint in *Ziboukh*).

**Batching Clause.** The *Ziboukh* Plaintiffs next challenge the batching clause in the Terms as substantively unconscionable, but, again, it is not. First, the batching provision is fair to both sides, because any ambiguities concerning how it will be administered are decided by either the AAA or a neutral arbitrator, not by any individual party. Terms § 19.9; *cf. McGrath v. DoorDash*, 2020 WL 6526129, at *10 (N.D. Cal. Nov. 5, 2020) (finding that mass arbitration protocol appeared fair because the "test cases are chosen randomly").[10]

Second, the *Ziboukh* Plaintiffs are wrong that the batching process "deprives consumers of [] 'individual' adjudication." Amicus Br. at 23. The AAA's rules make clear that, while the parties may agree to "assign multiple cases to a single arbitrator, making the scheduling of conferences and hearings more efficient," "[e]ach case will still be heard and decided individually by the arbitrator." ECF No. 46-7 at 3. Further, no batch has a precedential effect on any subsequent batch. Terms § 19.9.

Finally, the *Ziboukh* Plaintiffs vaguely allege that the arbitration provision "lack[s] other procedural safeguards," but they are wrong here as well. Amicus Br. at 23-24. The provision has several safeguards, including (i) the right to bring claims in small-claims court for any claims that qualify, *see* Terms § 19.1, (ii) the right to opt out of the agreement altogether within 30 days, *see id.* § 19.10, and (iii) the ability for AAA to adjudicate batches of arbitrations concurrently, rather than serially, so as to avoid unnecessary delays, *see id.* § 19.9; *cf. MacClelland*, 609 F. Supp. 3d at 1042 (finding that provision requiring serial adjudication of batches of arbitrations risked

---

[10] The *Ziboukh* Plaintiffs' claim that it is unconscionable for a claimant to potentially be required to litigate a claim outside the county they reside (Amicus Br. at 23) is bizarre—given that counsel for the *Ziboukh* Plaintiffs chose to bring a litigation on their clients' behalf in states (first in Illinois and then in New York) where most of their clients do not reside. The *Ziboukh* Plaintiffs do not and cannot explain why litigating outside their home states is unobjectionable in litigation but unconscionable in arbitration.

prejudicial delays, where "[i]n addition to the length of delay, the provision is pregnant with the risk that claims will be effectively barred when coupled with the statute of limitations.").

**Sanctions.** The *Ziboukh* Plaintiffs also complain that the provision in the Terms allowing arbitrators to impose attorneys' fees against a party bringing frivolous claims is non-mutual. Amicus Br. at 24. Here again, they mischaracterize the agreement. The provision on its face applies to *any* party that brings a frivolous claim against the other, and thus applies equally to Temu and consumers alike. Terms § 19.8 ("The *parties* shall bear their own attorneys' fees and costs in arbitration unless the arbitrator finds that either the substance of the Dispute or the relief sought in the Arbitration Notice was frivolous or was brought for an improper purpose. If *you or we* need to invoke the authority of a court of competent jurisdiction to compel arbitration, then the party that obtains an order compelling arbitration in such action shall have the right to collect from the other party its reasonable costs, necessary disbursements, and reasonable attorneys' fees incurred in securing an order compelling arbitration.").

**Public Injunctive Relief.** Finally, the *Ziboukh* Plaintiffs argue that the arbitration agreement "is unconscionable because it does not allow for an award of public injunctive relief." Amicus Br. at 24. The *Hu* Plaintiffs are not even seeking "public injunctive relief" and therefore cannot challenge this provision, nor can the *Ziboukh* Plaintiffs on their behalf. *See Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021) (holding that "public injunctive relief … is limited to forward-looking injunctions that seek to prevent future violations of law *for the benefit of the general public as a whole*, as opposed to a particular class of persons"—even including a large class of users of a consumer service). In any event, the agreement allows arbitrators to award individual injunctive relief, and makes clear that claims for public injunctive

relief may be severed and litigated in court. *See* Terms § 19.4. Accordingly, parties are not prevented from obtaining public injunctive relief. *See id.*

## III. DISCOVERY IS NEITHER REQUIRED NOR WARRANTED

There are no factual disputes requiring discovery because the motion to compel arbitration simply requires a review of the Prompt. *See supra* at § I. There is no dispute that the Prompt would have been viewed by the *Hu* Plaintiffs in registering for a Temu account, so therefore no additional factual information is needed to determine whether the parties formed an agreement to arbitrate. Your Honor previously stayed discovery in this litigation pending resolution of the motion to compel—consistent with the Supreme Court's holding in *Coinbase v. Bielski* that "the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery and the like) would be irretrievably lost" if discovery were not stayed pending ultimate resolution of a motion to compel arbitration. 599 U.S. 736, 743 (2023); *see* March 18, 2024 Order, ECF No. 20. The Northern District of Illinois stayed discovery in the *Ziboukh* case for the same reason, before the case was transferred. *See Ziboukh*, ECF No. 27. There is no reason for any change of course in this regard—particularly when the *Hu* Plaintiffs themselves are not seeking discovery.

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel should be granted.

Dated August 19, 2024

Respectfully submitted,

*/s/ Serrin Turner*
Serrin Turner
Matthew Valenti
Hadrian Luo
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

*Attorneys for Defendant Whaleco Inc. d/b/a Temu*

# APPENDIX 1

**SquareTrade Email**
***See Starke v. SquareTrade, Inc.*, 913 F.3d 279, 285 (2d Cir. 2019)**

**From:** SquareTrade Protection Plans [purchaseconfirmation@squaretrade.com]
**Sent:** Tuesday, January 05, 2016 8:15 PM
**To:** astarke613@gmail.com
**Subject:** SquareTrade Protection Plan on Amazon.com - Contract is Enclosed

Don't miss out on important emails. Add purchaseconfirmation@squaretrade.com to your address book.

square trade

Need help?

## Dear A.,

Thank you for purchasing your new **Electronics item** protection plan. You're all set! If you'd like to manage your SquareTrade account online, just click the link below.

**IMPORTANT:** You'll need your receipt to file a claim. Submit your receipt now, and we'll keep track of it for you.

Log In

## Your Protection Plan

| | | | |
|---|---|---|---|
| Coverage Amount: | **Up to the maximum coverage price of this Protection Plan, or the purchase price of your item, whichever is lower** | Coverage Term: | **2 Years** |
| Protection Plan Price: | **$4.34** | Coverage Start Date*: | **01/10/2016** |
| Coverage Type: | **Standard** | | |
| Covered Product: | **Other Electronics -** | Coverage End Date: | **01/10/2018** |
| Deductible: | **None** | | |
| Quantity: | **1** | Waiting Period: | **None** |

*If your item was back-ordered or delayed, please give us a call to confirm your coverage start date.

**Review your SquareTrade Protection Plan on Amazon**
Have an opinion? Share it with others.

WRITE A REVIEW

Terms & Conditions

How to Contact Us
Please, please don't reply to this email. We're unable to respond to messages sent to this address, and we absolutely, positively want to respond if you've got questions. Instead, email us by clicking here. Thanks!